**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Jason A. Ibey, Esq. (284607)
jason@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELISSA RONQUILLO-GRIFFIN, KHOI NGUYEN, and RUSSELL SMITH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TELUS COMMUNICATIONS, INC., TRANSUNION RENTAL SCREENING SOLUTIONS, INC., AND TRANSACTEL (BARBADOS), INC.,<br><br>Defendants. | Case No.: 3:17-cv-00129-JM-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:    October 22, 2018<br>Time:   10:00 a.m.<br>Ctrm.:  5D<br><br>Judge: Hon. Jeffrey T. Miller<br><br>Complaint filed:  January 24, 2017<br>SAC filed:  November 28, 2017<br><br>[Filed currently with Declaration of Kelissa Ronquillo-Griffin, Declaration of Khoi Nguyen, Declaration of Russell Smith, Declaration of Abbas Kazerounian, Declaration of Jason A. Ibey, Declaration of Joshua B. Swigart, Declaration of Daniel G. Shay, Declaration of Carla Peak] |

*(Left margin, vertical text:)* KAZEROUNI LAW GROUP, APC   245 FISCHER AVENUE, UNIT D1   COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

I.    INTRODUCTION ................................................................ 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........... 2

III.  THE SETTLEMENT ........................................................... 3

      A. The Settlement Class ................................................ 3

      B. Settlement Relief .................................................... 4

      C. Class Notice ......................................................... 5

            1.  **Direct Mail Notice** ...................................... 5

            2.  **Settlement Website and Toll-Free Number** ............. 7

            3.  **CAFA Notice** .......................................... 7

      D. Settlement Claim Process ......................................... 7

      E. Opportunity to Opt Out or Object ............................... 8

      F. Scope of Release ................................................... 8

      G. Termination of Settlement ........................................ 9

      H. Payment of Costs and Administrative Costs ..................... 9

      I.  Class Representative's Application for Service Award ........... 9

      J.  Plaintiffs Counsel's Application for Attorneys' Fees and Costs ..... 9

IV.   THE COURT SHOULD CERTIFY THE PROPOSED
      SETTLEMENT CLASS FOR PUPOSES OF IMPLEMENTING
      THE SETTLEMENT ........................................................... 9

      A. Numerosity .......................................................... 10

**B. Commonality** ............................................................ 10

**C. Typicality** ................................................................ 11

**D. Adequacy of Representation** ................................... 12

**E. Common Questions Sufficiently Predominate** ......... 13

**F. Superiority of Class Action** .................................... 13

**G. Standard For Preliminary Approval of Class
Action Settlement** ..................................................... 15

    **1.** **Public Policy Favors Settlement** ..................... 15

    **2.** **Conclusion of Fact and Law Are Not Necessary at This
Stage** .............................................................. 15

    **3.** **Counsels' Judgment Should Hold Considerable
Weight** ............................................................ 16

    **4.** **The Court Should Preliminarily Approve the
Settlement** ...................................................... 16

        ***i.*** ***The Agreement is entitled to a presumption of
fairness*** ....................................................... 16

        ***ii.*** ***The Settlement should be preliminarily approved, as it
is within the range of reasonableness based on the
relevant factors*** ........................................... 17

        ***iii.*** ***The strength of Plaintiffs' CIPA case*** ........... 18

        ***iv.*** ***The risk, expense, complexity, and likely duration of
further litigation, including the risks of obtaining and
maintaining class action status*** ...................... 18

        ***v.*** ***The benefits conferred by Settlement*** ............ 20

        ***vi.*** ***The extent of discovery completed and the state of the
proceedings*** ................................................. 21

vii.  *The experience and views of Counsel* ........................... 22

viii. *The anticipated reaction of Class Members to the proposed Settlement* ........................................... 23

ix.  *The proposed notice is appropriate* ................................ 23

x.  *Class Representatives and Class Counsels should be appointed as requested* ........................................... 25

xi.  *KCC should be appointed as Settlement Administrator* .................................................... 25

xii. *The Final Approval Hearing should be scheduled* ...... 25

**V.    CONCLUSION** ........................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Ades v. Omni Hotels Mgmt. Corp.*,
   No. 2:13-cv-02468-CAS (MANx), 2014 U.S. Dist. LEXIS 129689
   (C.D. Cal. Sep. 8, 2014) ···················································· 11, 12

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ·························································· 10

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ········································ 16

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*
   917 F2d 1171 (9th Cir. 1990) ·············································· 11

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ············································· 15

*Cohorst v. BRE Properties, Inc.,*
   2012 WL 153754 (S.D. Cal. 2012) ········································· 21

*Dunk v. Ford Motor Co.,*
   48 Cal. App. 4th 1794 (1996) ·············································· 16

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ·························································· 7

*Forcellati v. Hyland's Inc.,*
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ······························ 20

*Franklin v. Kaypro Corp.,*
   884 F.2d 1222 (9th Cir. 1989) ············································· 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. Cal. 1998) ·································· *passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ·············································· 10

*In re Chicken Antitrust Litig.*,
 560 F. Supp. 957 (N.D. Cal. 1980) ·················································· 17

*In re Mego Fin'l Corp. Sec. Litig.*,
 213 F. 3d 454 (9th Cir. 2000) ···················································· 17

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ·················································· 15

*In re Wireless Facilities, Inc. Sec. Litig. II*,
 253 F.R.D. 607 (S.D. Cal. 2008)··········································· 9, 12, 16

*Kirkorian v. Borelli*,
 695 F. Supp. 446 (N.D. Cal. 1988) ················································ 16

*Linney v. Cellular Alaska P'ship*,
 151 F.3d 1234 (9th Cir. 1998)····················································· 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
 244 F.3d 1152 (9th Cir. 2001)················································ 13, 14

*Manuel v. Wells Fargo Bank, N.A.*,
 2016 U.S. Dist. LEXIS 33708 (E.D. Va. Mar. 15, 2016)······················· 6

*Medeiros v. HSBC Card Servs.*,
 2017 U.S. Dist. LEXIS 178484 (C.D. Cal. Oct. 23, 2017) ····················· 21

*McCabe v. Six Continents Hotels, Inc.*,
 2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30, 2015) ····················· 21

*Miller v. Hitachi Am.*,
 2014 Cal. Super. LEXIS 1686 (San Mateo Oct. 17, 2014) ···················· 21

*Mirkarimi v. Nev. Prop. 1, LLC*,
 2015 U.S. Dist. LEXIS 112680 (S.D. Cal. Aug. 24, 2015) ···················· 21

*Molski v. Gleich*,
 318 F.3d 937 (9th Cir. 2003) ····················································· 9

*Mount v. Wells Fargo Bank*,
 N.A., BC395959 (Cal. Super. Ct. Aug. 13, 2014) ···························· 17

*Mount v. Wells Fargo Bank, N.A.,*
  BC395959 (Cal. Super. Ct. Aug. 13, 2014) ································· 20

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ······················································ 24

*Nader v. Capital One Bank, N.A.,*
  2014 WL 1258442 (C.D. Cal. Nov. 17, 2014) ························· 21

*National Rural Tele. Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ································ 17, 18, 21

*Officers for Justice v. Civil Service Com.,*
  688 F.2d 615 (9th Cir. 1982) ······································ 16, 18

*Parsons v. Ryan,*
  754 F.3d 657 (9th Cir. 2014) ··········································· 11

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.,*
  323 F. Supp. 364 (E.D. Pa. 1970) ····································· 16

*Reyes v. Educ. Credit Mgmt. Corp.,*
  322 F.R.D. 552 (S.D. Cal. 2017) ······································ 13

*Romero v. Producers Dairy Foods, Inc.,*
  235 F.R.D. 474 (E.D. Cal. 2006) ········································ 7

*Silber v. Mabon,*
  18 F.3d 1449 (9th Cir. 1994) ··········································· 24

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ··········································· 12

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) ············································ 18

*Valentino v. Carter-Wallace,*
  97 F.3d 1227 (9th Cir. 1996) ··········································· 14

*Van Bronkhorst v. Safeco Corp.*
  529 F.2d 943 (9th Cir. 1976) ··········································· 15

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ·················································· 19, 21

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ·································································· 10, 11

*West Va. v. Chas. Pfizer & Co.*,
440 F.2d 1079 (2d Cir. 1971) ··························································· 15

*Zincser v. Accufix Research Institute, Inc.*,
253 F.3d 1188 (9th Cir. 2001) ························································· 13

**STATUTES**

28 U.S.C. § 1715 ············································································· 7

Cal. Pen. Code § 630 ········································································ 9

Cal. Pen. Code § 631 ········································································ 9

Cal. Pen. Code § 632 ········································································ 9

Cal. Pen. Code § 632.7 ······································································ 9

Cal. Pen. Code § 637.2 ······································································ 9

**RULES**

Fed. R. Civ. P. 23 ·········································································· 10

Fed. R. Civ. P. 23(a) ······································································· 10

Fed. R. Civ. P. 23(a)(1) ···································································· 10

Fed. R. Civ. P. 23(a)(2) ···································································· 10

Fed. R. Civ. P. 23(a)(4) ···································································· 12

Fed. R. Civ. P. 23(b) ······································································· 10

Fed. R. Civ. P. 23(b)(3) ·························································· 10, 12, 24

Fed. R. Civ. P. 23(c)(2) ····································································· 7

Fed. R. Civ. P. 23(c)(2)(B) ································································ 24

Fed. R. Civ. P. 23(c)(3) ·················································· 24

Fed. R. Civ. P. 23(e) ····················································· 15

Fed. R. Civ. P. 23(e)(1)(B) ············································· 24

## OTHER

Fed. Judicial Ctr.,
   *Manual for Complex Litigation*, § 21.632 (4th ed. 2004) ················· 15

Fed. Judicial Ctr.,
   *Manual for Complex Litigation*, § 21.633 (4th ed. 2004) ··············· 10

H. Newberg,
   *Newberg on Class Actions* (4th ed. 2002 and Supp. 2004) ········· 15, 16, 17

# I.    INTRODUCTION

Plaintiffs Kelissa Ronquillo-Griffin ("Ms. Ronquillo-Griffin"), Khoi Nguyen ("Mr. Nguyen"), and Russell Smith ("Mr. Smith" or collectively "Plaintiffs") submit this unopposed motion for preliminary approval of a proposed class action settlement of this matter (the "Action") against defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") and Transactel Barbados, Inc. ("Transactel" or collectively "Defendants"). The terms of the proposed class action settlement are set forth in the Settlement Agreement and Release ("Agreement" or "Agr."[1]), filed as Exhibit A [1] to the Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶ 46, filed concurrently.

As detailed below, there are approximately 665 persons in the Settlement Class, covering a period between January 24, 2016 through February 8, 2017, whose cellular or cordless telephone conversations with Transactel were allegedly audio recorded without their consent. *See* Agr., Recitals § G; Declaration of Jason A. Ibey ("Ibey Decl."), ¶ 8. Under the Agreement, Defendants shall pay $425,000 into a non-reversionary Common Fund to settle the Action and obtain a release of all Released Claims in favor of Released Parties. Agr. §§ 1(l) & 13. The Common Fund will be used to send a settlement check to Authorized Claimants, after payment of notice and claims administration expenses, attorneys' fees and litigation costs, and any service award to the Plaintiffs ("Net Settlement Amount"). Agr. §§ 1(u) & 2.3-2.6.

While Plaintiffs are confident of a favorable determination on the merits, Plaintiffs and their counsel have determined that the proposed settlement provides significant benefits to the Settlement Class Members and is in the best interests of the Settlement Class. Kazerounian Decl. ¶ 7. Plaintiffs believe that the settlement

---

[1] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

[1] Exhibits are to the Declaration of Abbas Kazerounian unless otherwise stated.

is appropriate given the contested issues involved, the risks, uncertainty and costs of further prosecution of this litigation. *Id.* Defendants have denied the allegations by Plaintiffs, and believe they have meritorious defenses to Plaintiffs' claims. Agr., Recitals D, & § 15; Dkt. Nos. 52 & 53. However, Defendants agree that it is desirable to settle the Action on the terms in the Agreement. *See* Exhibit A.

Accordingly, Plaintiffs move the Court for an order certifying the class action pursuant to Fed. R. Civ. P. 23(b)(3) for settlement purposes only; preliminarily approving the proposed settlement; appointing Kurtzman Carson Consultants ("KCC") as the Settlement Administrator; directing dissemination of class notice; appointing the three Plaintiffs as the Class Representatives; approving Plaintiffs' attorneys as Class Counsel; and scheduling a Final Approval Hearing.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Transactel provides contact center outsourcing solutions including call center operations for co-defendant TURSS. Second Amended Complaint ("SAC"), Dkt. 47, ¶¶ 20-21. In December 2016, the three Plaintiffs, through counsel, requested a copy of their credit report from TURSS. *See id.*, ¶ 23.

On or about December 14, 2016, Plaintiff Ronquillo received a call on her cellular telephone, during which she was asked a variety of questions and told to forward an identification card to TURSS in order to receive a copy of her credit report. SAC, at ¶ 24. After speaking with a representative for several minutes, Ronquillo asked if the conversation was being recorded. *Id*. The representative answered in the affirmative even though no warning was given during the course of the conversation. *Id*. On or about December 14, 2016, Transactel contacted Plaintiff Smith on his cellular telephone. *Id*. at ¶ 25. During the conversation, a representative told Smith that he needed to send Defendant TransUnion a copy of his identification and utility bill. At no point was Smith advised that the conversation was being recorded. *Id*. at ¶ 26. On or about December 15, 2016, Transactel twice contacted Plaintiff Nguyen on his cellular telephone. *Id*. at ¶ 27.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

The agent stated that Nguyen needed to send in a copy of his driver's license or passport. *Id.*; Exhibit B (Transactel's Response to Nguyen's Interrogatories Set One, No. 2). Nguyen was not advised the call was being recorded. SAC, at ¶ 29.

Unknown to the three named Plaintiffs before the calls, Transactel (hired by TURSS) recorded all of its outgoing telephone calls with California consumers, and recorded the calls to all three named Plaintiffs, without giving a warning or notification at the outset that the conversations would be recorded. *Id.* at ¶¶ 23-29; Exhibit C (Transactel's Response to Nguyen's RFAs Set One, Nos. 8-9); Exhibit D (Transactel's Response to Smith's RFAs Set 2, Nos. 18).

In response to Transactel's recording practices, Plaintiffs brought the present action, on behalf of themselves and all others similarly situated in California, alleging violations of California Penal Code § 632.7 ("CIPA"), and common law invasion of privacy – the common-law claims have been dismissed, Dkt. No. 27.

After litigating this case for over a year, conducting written discovery, and depositions of the named Plaintiffs, the Parties participated in a full day mediation before Bruce Friedman, Esq. of JAMS, and engaged in arm's-length negotiations in an attempt to resolve this action. Kazerounian Decl., ¶ 6; Ibey Decl., ¶¶ 6-7. Based upon the investigation, analysis and discovery, including a confirmatory declaration obtained after mediation (Ibey Decl., ¶ 28; Exhibit 1 thereto), the Parties have agreed to settle the claims in this action on a California state-wide basis under the terms and conditions memorialized in the Agreement.

## III.   THE SETTLEMENT

### A.   The Settlement Class

The Settlement Class is defined as:

> All persons in California who, during the period from January 24, 2016 through February 8, 2017, were called by Transactel on behalf of TURSS on their cellular telephones and spoke with a representative. Excluded from the Settlement Class are the Judges to whom the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Action is assigned and any members of the Judges' staff
or immediate family.

Agr. § 1(y).

The Class consists of approximately 665 persons, based on discovery
conducted which included the assistance of an outside data analysis vendor, and
investigation by Transactel. *See* Ibey Decl. ¶ 8; Exhibit 1 thereto (confirmatory
declaration); Agr., Recitals ¶ G.

### B.   Settlement Relief

Defendants have agreed to pay an all-in, non-reversionary fund of
$425,000.00 (i.e., the Common Fund) as full and complete consideration for the
Settlement. Agr. § 2.1. The Common Fund shall also be used to pay: (i) settlement
checks, (ii) a service award to each Plaintiff, (iii) the Attorneys' fees and litigation
costs, (iv) administrative costs, and (v) taxes due in connection with the Settlement
prior to distribution to the Class. *Id.* at § 1(l). The amounts remaining after
deducting (ii) through (v) above (the "Net Settlement Fund") shall be used to pay
valid claims submitted by the Class Members. *Id.* at § 1(u) & § 2.3.

Settlement Class Members who submit a valid claim form shall receive a *pro
rata* distribution, up to $5,000. Agr. § 2.3. If all 665 estimated Settlement Class
Members were to submit a claim, their estimated recovery would be approximately
$406;[2] and if 10% were to submit a claim, their estimated recovery would be
approximately $4,035. Additionally, in response to the lawsuit, TURSS has
instructed Transactel to stop audio recording outgoing telephone calls and
Transactel has ceased recording those calls. Agr. § 2.8.

If any amounts remain in the Net Settlement Fund after payment of items (i)
through (v) above for more than sixty (60) calendar days after issuance, the

---

[2] $425,000 (Common Fund) – Attorneys' fees and Litigation costs ($123,250) –
notice and claims administration (estimated to be $22,384) – service awards
($9,000) = $270,366. $270,366 / 665 = Approx. $406.56.

Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626

1  Settlement Administrator will provide for a second distribution to only those who

2  cashed their initial check. Agr. § 2.4. The recipients of this second distribution will

3  have 60 days to cash this second check. *Id*.

4       After this second distribution, the Settlement Administrator shall make a *cy*

5  *pres* distribution of unclaimed funds to a nonprofit organization, as agreed on by

6  the Parties and the Court, with a total value that equals the amount remaining in the

7  Net Settlement Fund. Agr. § 2.1. Any unclaimed funds or any funds from

8  unclaimed settlement checks shall be delivered to a *cy pres* recipient selected by

9  the parties and approved by the Court. *Id*. at § 10. The Parties propose Media

10  Rights as the potential *cy pres* recipient of any unclaimed funds. *Id*.

11      **C.**    **Class Notice**

12       Notice to the Settlement Class Members will be provided by direct mail notice.

13  Subject to Court approval, the Parties propose that Kurtzman Carson Consultants

14  ("KCC") act as settlement administrator. *Id*. at § 1(x). The Settlement

15  Administrator's duties shall include but are not limited to: (i) setting up the

16  Settlement Website where Class Members can, among other things, fill out a Claim

17  and view this Agreement, (ii) setting up a toll-free number for receiving calls

18  related to the Settlement, (iii) implementing Class Notice, (iv) determining valid

19  claims, (v) distributing the settlement awards, (vi) maintaining proper records of

20  the settlement administration, and (vii) providing information to counsel for

21  Defendant and Class Counsel. *Id*. at §§ 3.1, 6.4, 12.1-12.2.

22      **1.**    <u>**Direct Mail Notice**</u>

23       After the entry of the Court Order granting the Preliminary Approval on or

24  before the date directed by the Court, Defendant shall provide a list to the

25  Settlement Administrator of all available names and addresses of persons called on

26  a cellular phone number with a California area code whose conversations may

27  have been recorded by Transactel within the settlement class period. *Id*. at §§ 1(h);

28  4.2. Transactel currently has names and addresses for 439 persons (Ibey Decl. ¶ 8)

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1    prior to a reverse phone number lookup. *See* Agr. § 4.2

2        Within 60 days after entry of the Preliminary Approval Order, the

3    Settlement Administrator shall mail the direct mail notice (in the form attached to

4    the Agreement as Exhibit B) to the identified Class Members' last known

5    addresses. Agr. § 4.5. The Settlement Administrator will conduct a reverse look-up

6    and/or skip tracing search of the addresses for the individuals whose addresses are

7    unknown to Defendants. Agr. §§ 1(h), 4.2 and 8.2.

8        In the event that a Class Notice is returned as undeliverable with a

9    forwarding address, the Settlement Administrator shall re-mail the Class Notice to

10   the indicated forwarding address provided by the U.S. Postal Service. *Id.* § 4.6;

11   Peak Decl., ¶ 12. If no forwarding address was provided by the U.S. Postal

12   Service, or the mailing to the forwarding address is returned as undeliverable,

13   obtain an address from LexisNexis and mail the Class Notice to that updated

14   address. *Id.* § 4.6. If the attempts at notice by mail are unsuccessful, and/or a

15   member of the Settlement Class otherwise fails to follow the procedures set forth

16   in this Agreement for submitting a claim or requesting exclusion from the

17   Settlement Class, and the member of the Settlement Class shall automatically be

18   deemed a Settlement Class Member whose rights and claims with respect to the

19   issues raised in the Complaint are determined by the Court's Final Order approving

20   the settlement and the Judgment, and by the other rulings in the Action. *Id.*

21       The Settlement Administrator will perform a reverse phone number lookup

22   on an estimated 211 phone numbers in order to obtain addresses information. Peak

23   Decl., ¶ 9; Agr. §§ 1(h) and 4.2. It is estimated that 80% of the Settlement Class

24   Members will receive mail notice. Declaration of Carla Peak ("Peak Decl."), ¶ 14.

25   This direct mail notice plan satisfies Due Process for this California-only

26   settlement. *See Manuel v. Wells Fargo Bank, N.A.* (E.D.Va. Mar. 15, 2016, No.

27   3:14-cv-238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *13 (E.D. Va. Mar. 15,

28   2016) (approving notice by direct mail and email, notice on the settlement website,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

and a toll-free phone number for inquiries); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-493 (E.D. Cal. 2006) ("First class mail is ordinarily sufficient to notify class members who have been identified").[3]

### 2.   Settlement Website and Toll-Free Number

Within sixty (60) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall ensure that the Settlement Website is active and able to accept online claims, and that a toll-free number is available for receiving calls related to the Settlement. *Id.* at §§ 3.1 & 8.2. The Settlement Website will contain, among other things, the Long-Form Notice, the Agreement, the Second Amended Complaint, a Claim Form that can be downloaded, the ability to make a claim online, and any additional relevant documents as later determined.

### 3.   CAFA Notice

Defendants shall be responsible for timely serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715. Agr. § 14.

### D.   SETTLEMENT CLAIMS PROCESS

To make a claim for monetary compensation, Settlement Class Members must submit a valid Claim. *Id.* at §§ 1(c), 6.1, 9.2. To file a valid Claim, a Class Member must: (i) complete a Claim Form by providing all of the requisite information (including the telephone number which was used to communicate with Defendants); (ii) affirm Class Members entitlement to a claim and the legality of the signature; (iii) either submit the Claim Form online through the Settlement Website or mail the Claim Form to the Settlement Administrator no later than one hundred and thirty (130) days after the Order granting preliminary approval ("Claims Deadline"). [*Id.* at §§ 1(c), 6.1, 8.2; Exhibit A to the Settlement Agreement]. Only Class Members who submit Valid Claims shall be entitled to an

---

[3] Rule 23(c)(2) provides that "individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).

1  Individual Settlement Amount. *Id.* at § 2.4. The Settlement Administrator shall be

2  responsible for determining the validity of all Claims. *Id.* at 6.4.

3  **E.   OPPORTUNITY TO OPT OUT AND OBJECT**

4  Settlement Class Members will have the right to opt out of the Settlement (*id.*

5  at § 7.1) or to object to its terms (*id.* at § 9.1).  The deadline for doing both is 130

6  days after entry of the Preliminary Approval Order.  *Id.* at §§ 7.1, 9.1, 8.2.

7  Settlement Class Members who wish to opt out of the Settlement may do so by

8  mailing a letter by U.S. mail, personally signed, and stating unequivocally that

9  he/she wishes to be excluded from this class action settlement. *Id.* at § 7.1. Such

10  request must be made in accordance with the terms in the Class Notice. *Id.* Class

11  Members will be requested but not required to provide a reason for the request. *Id.*

12  Further, any Settlement Class Member, who is not seeking to opt out, may

13  object to the Settlement by mailing his or her objections to the Settlement

14  Administrator. Agr. at § 9.1. The written objection must include: (a) in substantial

15  form the caption *Ronquillo v. TransUnion Rental Screening Solutions et al.*; (b) the

16  Class Member's full name, address, and telephone number; (c) a signed statement

17  under the penalty of perjury that he or she believes himself or herself to be a Class

18  Member; (d) statement of each objection; and (e) if represented by counsel, a

19  written brief detailing the specific reasons, if any, for each objection, including any

20  legal and factual support the objector wishes to bring to the Court's attention and

21  any evidence the objector wishes to introduce in support of the objections. *Id.*

22  Class Counsel shall file and serve a written response to any objection filed and

23  served by any Class Member. *Id.*; § 8.2. If objection is overruled, the objecting

24  Settlement Class Member will be bound by the Judgment. Agr. § 9.1.

25  **F.   SCOPE OF RELEASE**

26  In exchange for the relief described above, all Settlement Class Members,

27  other than those who exclude themselves from the Settlement, relinquish all class

28  claims against the Released Parties and arising out of this action, or are related to the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

claims asserted in the Action, including any and all claims relating to the intercepting, monitoring and/or recording of telephone calls or other communications, and any and all claims for violation of the California Invasion of Privacy Act (including without limitation Cal. Penal Code §§ 630, 631, 632, and 632.7), and any and all claims for statutory damages under Cal. Penal Code § 637.2 or similar statutes that prohibit or restrict the intercepting, recording or monitoring of telephone calls or other communications. *Id.* at § 13.1. Class Members also waive the provisions of Section 1542 of the Cal. Civil Code. Agr. § 13.3.

### G.   TERMINATION OF SETTLEMENT

The Agreement will be terminable in the event of various occurrences, including but not limited to receipt of more 25 request for exclusion. Agr. at § 7.2.

### H.   PAYMENT OF NOTICE AND ADMINISTRATIVE COSTS

The Agreement provides that all costs of the Notice Program and Claims Program, which are estimated to be $22,384 (Peak Deck., ¶ 14), to be paid out of the Common Fund. *Id.* at § 3.2. This is based on an estimated 7% claims rate.

### I.   CLASS REPRESENTATIVES' APPLICATION FOR SERVICE AWARD

The Agreement contemplates that Class Counsel will request a service award not to exceed $3,000 for each of the three named Plaintiffs. *Id.* at § 2.5.

### J.   CLASS COUNSEL'S APPLICATION OF ATTORNEYS' FEES AND COSTS

The Agreement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees and litigation costs to be paid from the Common Fund. *Id.* at § 2.6(a). Plaintiffs' counsel will not request more than 29% of the Common Fund as attorneys' fees and costs combined. *Id.*

## IV.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS FOR PURPOSES OF IMPLEMENTING THE SETTLEMENT

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see, e.g., Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). Like any other class certification

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1 decision, certification of a class for settlement purposes requires a determination

2 that the requirements of Rule 23(a) and at least of the subsections of Rule 23(b) are

3 met. *Id*. Fed. Judicial Ctr., Manual for Complex Litigation ("Manual"), § 21.633.

4 The action here meets the requirements of Rule 23(a) and Rule 23(b)(3).

5 ### A.    Numerosity

6 Class certification under Rule 23(a)(1) is appropriate where a class is so

7 "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23; *see*

8 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. Cal. 1998).

9 "Impracticability does not mean 'impossibility,' but only the difficulty or

10 inconvenience of joining all members of the class.'" *Harris v. Palm Springs*

11 *Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Here,

12 numerousity is satisfied. Based upon Transactel's records, the Parties agree that

13 there are approximately 665 Settlement Class Members. Ibey Decl. ¶ 8; Exhibit 1 to

14 Ibey Decl., Exhibit E (Transactel's Response to Ronquillo-Griffin's Requests for

15 Production Set One, No. 10); Exhibit C (Transactel's Response to Nguyen's

16 Requests for Admission Set One, No. 20). Thus, the potential members of the Class

17 are so numerous that joinder of all the members of the Class is impracticable.

18 ### B.    Commonality

19 A class has sufficient commonality "if there are questions of fact and law

20 which are common to the class." Fed. R. Civ. P. 23(a)(2); *see also Hanlon,* 150

21 F.3d at 1019. ("The existence of shared legal issues with divergent legal factual

22 predicates is sufficient, as is a common core of salient facts coupled with disparate

23 legal remedies within the class."); *Amchem Products, Inc. v. Windsor*, 521 U.S.

24 591, 623 (1997). "Commonality requires the plaintiff to demonstrate that the class

25 members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.

26 Ct. 2541, 2551 (2011). This means that the class members' claims "must depend

27 on a common contention . . . of such a nature that it is capable of classwide

28 resolution – which means that determination of its truth or falsity will resolve an

1   issue that is central to the validity of each one of the claims in one stroke." *Id.* This

2   requirement is also satisfied here.

3        There are questions of law and fact common to Plaintiffs and to the Class that

4   predominate over any questions affecting only individual members of the Class.

5   These common questions of law and fact include: (i) whether Defendants unlawfully

6   audio-recorded the putative class members on their cellular telephones; (ii)

7   assigned to a California area code; and (ii) whether Defendants failed to provide a

8   call recording disclosure at the outset of the calls. Under these circumstances, the

9   commonality requirement is satisfied for purposes of certifying a settlement class.

10  *See Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468, 2014 U.S. Dist. LEXIS

11  129689, *35 (C.D. Cal. Sep. 8, 2014) (finding commonality present and stating,

12  "there is no indication that individual consent issues will overwhelm issues

13  plaintiffs have shown to be resolvable through class-wide proof.").

14  **C.    Typicality**

15       Courts consistently find that the typicality prerequisite is met if the claims

16  arise from a common course of conduct, though "they need not be substantially

17  identical." *Hanlon,* 150 F.3d at 1020; *see also Parsons v. Ryan*, 754 F.3d 657, 685

18  (9th Cir. 2014); *see also Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*

19  917 F2d 1171, 1175 (9th Cir. 1990) (citation omitted), *amended* 937 F.2d 465 (9th

20  Cir. 1991) (holding that typicality is shown where claims "share common issue of

21  law or fact . . . and are 'sufficiently parallel to insure a vigorous and full

22  presentation of all claims for relief.'").

23       In this case, the three named Plaintiffs' claims are typical of the claims of the

24  Settlement Class Members, as they arise from a nearly identical factual basis.

25  Plaintiffs, like members of the proposed Class, received a telephone call on their

26  cellular telephone numbers from Transactel on behalf of TURSS. Exhibit B

27  (Transactel's Response to Plaintiff Khoi Nguyen's Interrogatories Set One, No. 2);

28  Exhibit F (Transactel's Response to Nguyen's RFAs Set Two, No. 23); SAC, ¶¶ 21-

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

31. During the calls, Transactel audio recorded the telephonic conversations without providing any disclosure of the recording. Exhibit  G (Transactel's Response to Smith's RFAs Set One, Nos. 1-11); Exhibit H (Transactel's Response to Ronquillo-Griffin's Requests for Admissions Set One, Nos. 5, 10-12). Thus, Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Settlement Class Members. Plaintiffs' claims are therefore typical of the claims of the Settlement Class. *See Ades*, 2014 U.S. Dist. LEXIS 129689 at *26.

### D.   Adequacy of Representation

Adequacy of representation is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to adequately protect the interest of the class the named plaintiffs and their counsel must: (1) not have any conflicts of interest with other class members and (2) prosecute the action vigorously on behalf of the class. *Id.*; *see also In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)). Here, the three named Plaintiffs and counsel do not have any known conflicts of interest with other Settlement Class Members. Kazerounian Decl., ¶ 10; Ibey Decl., ¶ 12; Declaration of Joshua B. Swigart ("Swigart Decl."), ¶ 9; Declaration of Daniel G. Shay ("Shay Decl."), ¶ 10; Declaration of Kelissa Ronquillo-Griffin ("Ronquillo Decl."), ¶ 12; Declaration of Khoi Nguyen ("Nguyen Decl."), ¶ 12; Declaration of Russell Smith ("Smith Decl."), ¶ 12.

Further, Plaintiffs and their counsel have been vigorously litigating this matter since its inception, overcoming, in part, the motion to dismiss in terms of the CIPA claims. Dkt. No. 27. Each named Plaintiff appeared and testified at their deposition, and responded to discovery responses propounded by Defendant Transactel. *See* Ibey Decl., ¶ 7. Lastly, Class Counsel are experienced in prosecuting consumer actions, including consumer class actions. Kazerounian Decl., ¶¶ 11-45; Swigart Decl., ¶¶ 11-17; Ibey Decl, ¶¶ 15-26; Shay Decl., ¶¶ 11-15. Plaintiffs and their counsel will adequately represent the interest of the Settlement

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1  Class.

2  **E.    Common Questions Sufficiently Predominate**

3  Class certification under Rule 23(b)(3) is appropriate where "questions of

4  law or fact common to class members predominate over any questions affecting

5  only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on

6  whether the class is "sufficiently cohesive to warrant adjudication by

7  representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

8  *Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is

9  "the notion that the adjudication of common issues will help achieve judicial

10  economy." *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th

11  Cir. 2001) (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001).

12  Here, the central inquiry is whether Transactel, hired by TURSS, advised of

13  call recording on its calls to cell phone numbers of persons with a California area

14  code. "When common questions present a significant aspect of the case and they

15  can be resolved for all members of the class in a single adjudication, there is clear

16  justification for handling the dispute on a representative rather than on an

17  individual basis." *Hanlon*, 150 F.3d at 1022. *See Reyes v. Educ. Credit Mgmt.*

18  *Corp.*, 322 F.R.D. 552, 560 (S.D. Cal. 2017) (Common questions: "whether

19  ECMC's recording practice violated CIPA, whether ECMC's pre-recorded message

20  was transmitted to potential class members, whether the message and/or other

21  disclosures were sufficient to establish awareness of recording for all subsequent

22  calls, and whether a caller's hold time can serve as a proxy for notice and

23  consent—predominate in this case."). Therefore, the court should certify the class

24  for settlement purposes because common questions predominate.

25  **F.    Superiority of Class Action**

26  Resolution of the dispute under the class action mechanism of redress for

27  settlement purposes makes sense because it is superior to all other available means

28  for the fair and efficient adjudication of this controversy involving persons called in

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

California. *See Culinary/Bartenders Trust Fund*, 244 F.3d at 1163 (find that "if a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."); *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists"). As explained in *Hanlon,* 150 F.3d at 1023, the Ninth Circuit held that superiority prong was met because "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions." *Id.* In fact, pursuing individual settlements would provide "less litigation or settlement leverage, significantly reduce[] resources [providing] no greater prospect for recovery." *Id.*

In the present case, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts regarding the calling practices of Transactel, and vicarious liability of TURSS for the conduct of Transactel. Individualized litigation would also cause significant delay and expense to the parties and overwhelming waste of already limited judicial resources by the actions brought by hundreds of individual consumers. Furthermore, the damages or other financial detriment suffered by individual Settlement Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation. Resolution of the dispute under the class action mechanism of redress here is superior to hundreds of individual actions for statutory damages where there is no provision of recovery of attorneys' fees in the statute.

By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, resolving the claims against both named Defendants, and providing vindication to the class members who were not aware of having claims against Defendants for call recording without a call recording advisement. A class action here is therefore superior for settlement purposes.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### G.     Standard For Preliminary Approval of Class Action Settlement

A class action may not be dismissed, compromised or settled without the approval of the Court. Fed. R. Civ. Proc. 23(e). To preliminary approve a class action settlement, the Court must simply determine whether the class settlement is within the "range of reasonableness," and hence whether disseminating notice to the class and scheduling a formal fairness hearing are merited. *See* 4 Herbert B. Newberg, Newberg on Class Actions § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004). The Court is not required to make an in-depth and final determination that a settlement is fair, reasonable, and adequate; instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.632.

### 1.  Public Policy Favors Settlement

There is an overriding public interest in settling class action lawsuits, and a strong judicial policy favoring such settlements. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp*. 529 F.2d 943, 950 (9th Cir. 1976)); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, expenses, and rigors of prolonged litigation. *Van Bronkhorst*, 529 F.2d at 950. Accordingly, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

### 2.  Conclusion of Fact and Law Are Not Necessary at This Stage

At the preliminary approval stage, the Court need not reach any ultimate conclusions on the issues of fact and law, which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Serv. Comm'n of the*

*City and City of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).  Preliminary approval is merely a prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

### 3.  <u>Counsels' Judgment Should Hold Considerable Weight</u>

Although the decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge" (*see Hanlon*, 150 F.3d at 1026), the opinion of experienced counsel supporting the settlement is entitled to hold considerable weight (*see, e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).  Plaintiffs' counsel believe that the settlement is a fair compromise that avoid the risks of further litigation and trial, while providing a significant monetary recovery to the Settlement Class as well as bringing about changed business practices of TURSS. Kazerounian Decl., ¶¶ 7, 9; Swigart Decl., ¶¶ 8, 10; Ibey Decl., ¶ 11; Shay Decl., ¶ 8.

### 4.  <u>The Court Should Preliminarily Approve the Settlement</u>

#### i.  *The Agreement is entitled to a presumption of fairness*

A presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg & Conte, Newberg on Class Actions *supra*, § 11.41; *see also Dunk v. Ford Motor Co.* 48 Cal.App.4th 1794, 1802 (1996).  The proposed settlement here satisfies the above three requirements, and the number of expected objections is small, if any.

A presumption of fairness exists where a settlement is reached through arms-

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

length bargaining. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see also National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Cal. 1980); Newberg on Class Actions § 11.51. This Settlement was reached after the parties (i) investigated and researched their respective claims and defenses, (ii) engaged through an extensive discovery process, (iii) exchanged relevant documents during discovery, which, among other things, determined the putative class and appropriate notice, (iv) participated in arm's length negotiations, in the form of a full-day mediation with one of the most respected and experienced mediators in California, Bruce Friedman, Esq., and, (v) continued discussions, including a confirmatory declaration of Transactel, in an attempt to finalize the settlement, including determining the approximate class size and the appropriate notice. The Settlement of this Action is the result of non-collusive, arms-length and informed negotiations. Agr. § 23.1; Kazeronian Decl., ¶ 6.

ii.    ***The Settlement should be preliminarily approved, as it is within the range of reasonableness based on the relevant factors***

In making the fairness determination for final approval purposes (i.e., not preliminary approval, like here), courts consider a number of factors, including the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of the class members to the proposed settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (quoting *Hanlon*, 150 F.3d at 1026). However, "[n]ot all factors will apply … [and], [u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 2003 U.S. Dist. LEXIS 25375, at *6

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

(C.D.Cal. Jan. 5, 2003); *see, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993). While the Court need not and should not at this stage determine whether the proposed settlement is fair and adequate for purposes of final approval, there is ample evidence that it falls well "within the range" of fairness and adequacy for preliminary approval.

### iii.   *The strength of Plaintiffs' CIPA case*

Liability is highly contested. After investigating Plaintiffs' claims and discussing said claims with Defendants, Plaintiffs' counsel believe this is a strong case, which would prevail at trial but the outcome of the case is by no means certain absent a settlement. Kazerounian Decl., ¶¶ 5, 7. It is the opinion of Plaintiffs' counsel that the settlement of $425,000.00 is in part due to the strength of Plaintiffs' claims. *Id*. at ¶ 7. On the other hand, Defendants deny all of Plaintiffs' allegations, and maintains that its policies and procedures were and are in compliance with all applicable laws. Agr. Recital D; § 15. Defendants believe that they have meritorious defenses to all of the claims asserted in the Action. *Id*. This settlement avoids risks and continued expense to both sides in continuing the Action.

### iv.   *The risk, expense, complexity, and likely duration of further litigation, including the risks of obtaining and maintaining class action status*

An important consideration is "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat' Rural Telecoms Corp. v. DirectTV, Inc.* 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). However, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.; Officers for Justice,* 688 F.2d at 625 ("Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). Also considered "is the risk of continued litigation balanced against the certainty and

1  immediacy of recovery from the settlement." *Vasquez v. Coast Valley Roofing, Inc.,*
2  266 F.R.D. 482, 489 (E.D. Cal. 2010).

3      Given the parties' legal and factual positions and litigation for over a year,
4  continued litigation would be protracted, unduly burdensome, and expensive. Most
5  importantly, if the Action were to continue, Defendants would undoubtedly continue
6  to vigorously defend the action. *See* Agr. § 15; Recital D. Prior to settlement,
7  Defendants intended to challenge each Plaintiff's credibility and adequacy of serving
8  as Class Representatives. Exhibit D (Transactel Response to Smith's RFAs Set Two,
9  Nos. 21-23). Similarly, Defendant TURSS also contends, and would likely challenge,
10  that Transactel is an independent contractor, and thus TURSS is not vicariously liable
11  for Transactel's conduct. *Id*. (Transactel's Response to Smith's Requests for
12  Admissions Set Two, No. 20.) This would be a highly contested issue, as Plaintiffs
13  know that TURSS had authorized Transactel to place the calls. Exhibit F
14  (Transactel's Response to Nguyen's RAFs Set Two, No. 23.)

15      If litigation were to continue, Plaintiffs would take the Rule 30(b)(6)
16  deposition of both Defendants, and would have obtained additional written discovery
17  responses from TURSS which Plaintiffs believe would have provided additional
18  evidence to support a finding of vicarious liability. Additionally, Defendants would
19  have likely argued against class certification on the basis that some of the persons
20  called may not have been in California at the time of the calls, even though they had
21  a California area code, and would thus not have standing to bring a claim for
22  violation of this California statute. But settlement avoid these risks to both sides.

23      Moreover, to fully prosecute this case through trial, the Parties would need to:
24  (1) continue litigating their discovery disputes; and, (2) undertake the arduous task of
25  certifying or opposing a class action, which could significantly impact both Parties
26  (i.e., the class may not be certified thereby eliminating any class relief, or the class
27  may be certified thereby significantly increasing Defendants' liability). Lastly, any
28  decision on the merits is likely to be appealed, resulting in further delays,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

uncertainties, and great expense.

In considering the Settlement, Plaintiffs, Class Counsel and Defendants carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class, including the significant settlement and payout laid out by the Agreement. The Agreement avoids these risks for both sides.

### v.   *The benefits conferred by Settlement*

The benefits conferred by the Settlement for the Class are substantial and clearly outweigh the potential benefits and risks of proceeding with the class action. They include both a monetary payment and the Action has resulted in changes business practices. Courts have stated that the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska* P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, each Settlement Class Members will receive a *pro rata* share of the Net Settlement Amount, up to $5,000, which is their maximum recovery under the statute (Cal. Pen. Code § 637.2). Agr. §§ 2.3-2.4. In Plaintiffs' counsel's experience in settling claims of this type that a claims rate above 10% is unlikely. *See Forcellati v. Hyland's Inc.*, No. 12-cv-1983, 2014 U.S. Dist. LEXIS 50600, *17 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *Mount* v. *Wells Fargo Bank, N.A.*, BC395959 (Cal. Super. Ct. Aug. 13, 2014) granting final approval of a CIPA class action settlement with a 4.2% claiming rate) [Exhibit I to Kazerounian Decl.]. The estimated claims rate here is likely to be greater than 5% on account of Transactel having information for 68% of the Settlement Class. Ibey Decl., at ¶ 8 (names and addressed for 439 persons; and names or partial name but no address for 15 persons); Exhibit 1 to Ibey Decl.

The estimated payout here of at least several hundred dollars and up to $5,000 is an excellent result for the Settlement Class Members, as (1) the value

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

offered is a compromise of the maximum statutory damages each class member could receive in this matter, which would otherwise be highly contested and require vigorous litigation efforts, and (2) the value offered is substantially better when compared to other similarly approved settlements, some of which only offer a recovery varying from \$1.58 to \$64.47.[4] Thus, the Settlement provides for a significant monetary payment that is much higher than many other settlements under CIPA, without the risks and inherent delays of an adverse jury verdict, trial decision, or potential appeal.

### vi.   *The extent of discovery completed and the state of the proceedings*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Natl' rural Telecoms Corp. v. DirectTV, Inc.* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted). "Absent evidence of fraud or collusion, courts also should accord 'great weight' to the recommendations of counsel." *Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx)) 2017 U.S. Dist. LEXIS 178484, at \*16. (C.D. Cal. Oct. 23, 2017) (citing *Nat'l Rural Telecomms.,* 221 F.R.D. at 528).

The parties diligently litigated this action for over a year. On January 24,

---

[4] *See Nader v. Capital One Bank, N.A.,* No 12-cv-01265 DSF, 2014 WL 1258442, Dkt. 145 (C.D. Cal. Nov. 17, 2014) (\$3 million settlement for approximately 1,896,044 potential class members, or \$1.58 per person)*; Cohorst v. BRE Properties, Inc.,* No. 10-cv-2666 JM, 2012 WL 153754, Docket Nos. 101, 109 (S.D. Cal. 2012) (\$5.5 million settlement for approximately 1,170,584 potential class members, or \$4.70 per person)*; Miller v. Hitachi Am.*, No. CIV 526430, 2014 Cal. Super. LEXIS 1686 (San Mateo Oct. 17, 2014) (granting preliminary approval of CIPA class action settlement with different settlement classes receiving \$20 or \$145 per class member); *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818, 2015 U.S. Dist. LEXIS 85084, \*27-29 (N.D. Cal. June 30, 2015) (collecting cases approving CIPA settlements of \$1-\$7.50 per class member); *Mirkarimi v. Nev. Prop. 1, LLC,* No. 12-CV-2160, 2015 U.S. Dist. LEXIS 112680, \*10-11 (S.D. Cal. Aug. 24, 2015) (granting preliminary approval of CIPA settlement with estimated *pro rata* award of \$64.47).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

2017, Plaintiffs, after investigating their claims, instituted this instant action. Dkt. 1. After the initial motion practice, this case moved forward, and the parties engaged into the discovery processes involving more than one set of written discovery. After the filing of this action, Transactel has also ceased audio recording outgoing calls. Agr. § 2.8. During discovery processes, Transactel identified the total number of unique cell phone numbers called that had a California area code, Dkt. No. 55-1, which allowed the parties to determine the approximate class size. Transactel also provided a confirmatory declaration post-mediation. Exhibit 1 to Ibey Decl., ¶ 28. Plaintiffs' counsel are fully aware of the potential benefits and risks of this case, and are confident that this Settlement is in the best interests of the Class.

After exchanging documents and the deposition of the three named Plaintiffs, the Parties decided to attend an arm's length negotiations in the form of a full-day mediation before Bruce Friedman. *Id.* at Recital E. Although the Parties agreed to a resolution with the guidance of Bruce Friedman, Esq. of JAMS, the details of the Agreement were discussed and ultimately finalized over a period of several months, which included a confirmatory declaration from Transactel. Ibey Decl., ¶ 28. The Parties are fully aware of the risks and benefits of continued litigation.

### vii.   *The experience and views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel are qualified and highly experienced in litigating complex consumer class actions. *See* Kazerounian Decl., ¶¶ 11-45; Swigart Decl. ¶¶ 11-17; Ibey Decl, ¶¶ 15-26; Shay Decl., ¶¶ 11-15. Given Class Counsel's extensive experience in litigating similar type cases, the Class Counsel are well position to assess the risks of continued litigation and benefits obtained by the settlement.

Similarly, Counsel for Defendants have extensive experience based on a long

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

track record in complex class actions. [5] Defendants' attorneys have vigorously defended Defendants throughout this case and during mediation with Bruce Friedman, Esq. of JAMS. Defendants were able to obtain dismissal of the Plaintiffs' common-law invasion of privacy claims, Dkt. No. 27.

Class Counsel have also actively researched and litigated this case for a full year (*see* Dkt. Nos. 1, 27, and 56), prior to reaching settlement. Counsel for each side are fully aware of the potential benefits of settlement and substantial risks of proceeding with litigation and have determined settlement to be the in the best interest of the Class. *See Vasquez,* 266 F.R.D. at 490 ("Here, class counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair, and certain result. This factor weighs in favor of approval.")

### viii.   *The anticipated reaction of Class Members to the proposed Settlement*

Class Counsel are confident that the Settlement Class Members will be satisfied with the proposed Settlement. This benefit offered by the settlement is a substantial portion of the maximum award possible, but without the risks and delay of further litigation and trial.  Settlement Class Members need only submit a claim form online or by mail in order to receive the settlement payment. Agr. at § 4.3. Further, any dissenting Settlement Class Member will be permitted to object to the proposed settlement and be heard at the Final Approval Hearing before this Court. *Id*. at §§ 8.2 & 9.1. Consequently, the Court will have an opportunity to judge the class members' reaction to the settlement before granting final approval.

### ix.   *The proposed notice is appropriate*

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the

---

[5]   *See*   https://www.dlapiper.com/en/us/people/t/totino-edward-d/;   and https://www.stroock.com/people/SDudic.

1  circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice

2  be "actually received."  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

3  Notice need only be given in a manner "reasonably calculated, under all the

4  circumstances, to apprise interested parties of the pendency of the action and afford

5  them an opportunity to present their objections."  *Mullane v. Central Hanover*

6  *Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court

7  approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.

8      Pursuant to the Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in

9  a reasonable manner to all class members who would be bound by the proposal."

10  The notice must concisely and clearly state in plain, easily understood language: (i)

11  the nature of the action; (ii) the definition of the class; (iii) the class claims, issues,

12  or defenses; (iv) that class member may enter an appearance through counsel if the

13  member so desires; (v) that the court will exclude from the class any member who

14  requests exclusion, stating when and how members may elect to be excluded; (vi)

15  the time and manner for requesting exclusion; and (vii) the binding effect of a class

16  judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

17      Here, Notice will be provided directly through the mail (Peak Decl., at ¶ 14;

18  Agr. § 3), and by establishing a Settlement Website and toll-free number. *Id.* at §

19  12.2. For those Class Members whose mailing address Transactel has in its files,

20  these perspons will be notified through mail. *Id.* The notice plan provides the

21  Settlement Administrator will perform a reverse phone lookup in an effort to

22  obtain contact information and then mail them notice. Notice will also be posted on

23  the Settlement Website. *Id.* at § 3.1. The class notice will clearly state in plain and

24  easily understood language the requirements outlined above and required under

25  Rule 23(c)(3). *See* Exhibit B to Settlement Agreement.

26      Thus, under the circumstances and information available, Direct Notice will be

27  provided to all consumers for which mailing addresses are available. It is estimated

28  that the direct mail notice will reach at least 80% of the Settlement Class Members.

Peak Decl., at § 14. Thus, the notice plan fulfills the requirements of adequate notice for Due Process purposes and should be preliminarily approved.

### x.  *Class Representatives and Class Counsels should be appointed as requested*

The adequacy of representation requirement is satisfied here, and there are no known conflicts of interest as noted above. For settlement purposes, Plaintiffs request that they be confirmed as the Class Representatives. *See* Agr. § 1(k). Similarly, Plaintiffs request that Abbas Kazerounian, Jason A. Ibey, Joshua B. Swigart, and Daniel G. Shay be appointed as Class Counsel. *Id*. at § 1(g).

### xi.  *KCC should be appointed as Settlement Administrator*

The Parties have agreed upon and propose that the Court appoint KCC to serve as the Settlement Administrator. *Id*. at § 1(x). KCC provides administrative services in class action litigation and has extensive experience in administering consumer protection and privacy settlements. Peak Decl., ¶¶ 2-4.

### xii.  *The Final Approval Hearing should be scheduled*

Plaintiffs request a formal Fairness Hearing be scheduled no earlier than 175 days after the Court grants preliminary approval. Agr. § 8.2.

## V.    CONCLUSION

In sum, Plaintiffs respectfully request that the Court enter an order[6]: i) preliminarily approving the proposed Settlement, ii) providing for notice to the Settlement class, iii) appointing KCC as the settlement administrator, iv) appointing the three named Plaintiffs as Class Representatives, v) appointing Abbas Kazerounian, Jason A. Ibey, Joshua B. Swigart and Daniel G. Shay as Class Counsel; and vi) setting a fairness hearing.

---

[6] Pursuant to agreement of the Parties, Plaintiffs will submit an updated proposed preliminary approval order that includes language that disclosure of consumer information for purposes of this settlement does not violate 15 U.S.C. § 1681b.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Dated: August 27, 2018

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:  /s Abbas Kazerounian
      ABBAS KAZEROUNIAN, ESQ.
      *Attorney for Plaintiffs*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq.
yana@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Counsel for Plaintiffs*

**LAW OFFICE OF DANIEL G. SHAY**
Daniel G. Shay, Esq. (250548)
danielshay@tcpafdcpa.com
409 Camino Del Rio South, Suite 101B
San Diego, CA 92108
Telephone: (619) 222-7429
Facsimile: (866) 431-3292
*Counsel for Plaintiffs*