**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

Attorneys for the Plaintiffs and Proposed
Settlement Class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KELISSA RONQUILLO-GRIFFIN, KHOI NGUYEN, and RUSSELL SMITH, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**TRANSUNION RENTAL SCREENING SOLUTIONS, INC., and TRANSACTEL (BARBADOS), INC.,**<br><br>**Defendants.** | **Case No.:** 3:17-cv-00129-JM-BLM<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE**:  May 6, 2019<br>**TIME**:  10:00 a.m.<br>**CRTRM**:  5D<br>**JUDGE**:  Hon. Jeffrey T. Miller<br><br>**[Declaration of Abbas Kazerounian; Declaration of Joshua B. Swigart; Declaration of Jason A. Ibey; Declaration of Daniel G. Shay; Declaration of Kelissa Ronquillo-Griffin; Declaration of Khoi Nguyen; Declaration of Russell Smith; Declaration of H. Jacob Hack]** |

*Kazerouni Law Group, APC*
*Costa Mesa, California*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

I.   INTRODUCTION ............................................................................ 1

II.  BRIEF HISTORY SINCE PRELIMINARY APPROVAL ...................... 2

III. THE INVASION OF PRIVACY ACT AND CLASS
     ALLEGATIONS ............................................................................ 2

IV.  SETTLEMENT ............................................................................ 3

     A. The Fairness Hearing ................................................................ 4

     B. The Attorneys' Fees, Costs Application, and Service Awards ......... 4

     C. Class Action Settlement Terms .................................................. 4

          1. Certification of a Fed. R. Civ. P. 23(b)(3) Settlement
             Class ................................................................................ 4

          2. $425,000 Settlement Fund .................................................. 5

V.   ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL ...... 5

     A. CAFA Notice ............................................................................ 6

     B. Class Notice ............................................................................ 6

     C. Detailed Notice Posted On The Settlement Website ..................... 6

     D. Toll-Free Phone Number ........................................................... 7

     E. Claims Procedure, Including Expenses, and Claims Received ........ 7

          1. No objections; No requests for exclusion ............................. 8

          2. Settlement checks ............................................................. 8

VI.   **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED** ......................................................................... 9

  A. **The Settlement Satisfies The Requirements of Fed. R. Civ. P. 23** .... 9

  B. **The Settlement Should Be Finally Approved By The Court** .......... 10

      1. **The strength of the Lawsuit and the risk, expense, complexity, and likely duration of further litigation** ....... 12

      2. **The amount offered in Settlement** ................................... 14

      3. **Class Members were provided with the best notice practicable, which afforded them an opportunity to choose whether to participate in the Settlement** .............. 16

      4. **The extent of discovery completed** ................................ 18

      5. **The experience and view of Class Counsel** ....................... 19

      6. **The reaction of Class Members to the Settlement** ........... 20

VII.  **APPROVAL OF POTENTIAL CY PRES DISTRIBUTION** ............... 21

  A. **Cy Pres Distribution of Uncashed Checks After Any Second Settlement Distribution** ........................................................... 21

  B. **Guidance from the Ninth Circuit** ........................................ 21

  C. **New Media Rights Is an Appropriate Cy Pres Recipient** ............... 22

      1. **Nature of the Lawsuit** .................................................. 22

      2. **Objective of Invasion of Privacy Act** ............................. 23

      3. **Interests of silent Class Members** ................................ 23

VIII. **CONCLUSION** .......................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Ades v. Omni Hotels Mgmt. Corp.*,
    No. 2:13-cv-02468-CAS (MANx), 2014 U.S. Dist. LEXIS 129689
    (C.D. Cal. Sep. 8, 2014) ·················································································· 13

*Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*,
    80 F. Supp. 3d 781 (N.D. Cal. Feb. 12, 2015) ········································· 14

*Barani v. Wells Fargo Bank, N.A.*,
    No. 12cv02999-GPC-KSC,
    2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014) ················· 17, 20

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) ····························································· 20

*Berkey Photo Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) ····································································· 13

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ·························································· 19

*Cohorst v. BRE Properties, Inc.*,
    2012 WL 153754 (S.D. Cal. 2012) ·························································· 16

*Couser v. Comenity Bank*,
    125 F. Supp. 3d 1034 (S.D. Cal. 2015) ··················································· 20

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ································································· 11

*Forcellati v. Hyland's Inc.*,
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ··········································· 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ····································································· 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. Cal. 1998) ··················································· 10, 11

*Hoffman v. Bank of America, N.A.,*
 No. 12-cv-00539-DBH (S.D. Cal. Nov. 6, 2014) ·································· 16

*In re Diamond Foods, Inc.,*
 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) ····················· 8

*In re Ferrero Litig.,*
 2012 U.S. Dist. LEXIS 15174 (S.D. Cal. Jan. 23, 2012) ···················· 11

*In re Global Corssing Sec. ERISA Litig.,*
 225 F.R.D. 436 (E.D. Pa. 2000) ·············································· 18

*In re Mego Fin'l Corp. Sec. Litig.,*
 213 F. 3d 454 (9th Cir. 2000) ·········································· 17, 18

*In re Warner Communications Sec. Litig.,*
 618 F. Supp. 735 (S.D. N.Y. 1985) ········································· 11

*Jaffe v. Morgan Stanley & Co.,*
 No. 06cv02903-THE,
 2008 U.S. Dist. LEXIS 12208
 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ··································· 18

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*
 654 F.3d 935 (9th Cir. 2011) ··············································· 12

*Kline v. Dymatize Emters., LLC,*
 No. 15cv02348-AJB-RBB,
 2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016)···················· 20

*Linder v. Thrifty Oil Co.,*
 23 Cal. 4th 429 (Cal. 2000) ················································ 18

*Linney v. Cellular Alaska P'ship,*
 151 F.3d 1234 (9th Cir. 1998)··············································· 19

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
 671 F. Supp. 819 (D. Mass. 1987) ······································ 11, 20

*Medeiros v. HSBC Card Servs.,*
 2017 U.S. Dist. LEXIS 178484 (C.D. Cal. Oct. 23, 2017) ··················· 20

*McCabe v. Six Continents Hotels, Inc.*,
    2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30, 2015) ·················· 15

*Miller v. Hitachi Am.*,
    2014 Cal. Super. LEXIS 1686 (San Mateo Oct. 17, 2014) ·············· 16

*Mirkarimi v. Nev. Prop. 1, LLC*,
    2015 U.S. Dist. LEXIS 112680 (S.D. Cal. Aug. 24, 2015) ··············· 15

*Mount v. Wells Fargo Bank*,
    N.A., BC395959 (Cal. Super. Ct. Aug. 13, 2014) ······················ 17

*Nachsin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ·································· 22

*Nader v. Capital One Bank, N.A.*,
    2014 WL 1258442 (C.D. Cal. Nov. 17, 2014) ························ 15

*National Rural Tele. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ·························· 11, 17, 20

*Officers for Justice v. Civil Service Com.*,
    688 F.2d 615 (9th Cir. 1982) ·························· 10, 11, 12

*Raffin v. Medicredit, Inc.*,
    No. 15cv04912-GHK-PJW,
    2016 U.S. Dist. LEXIS 181819 (C.D. Cal. Dec. 19, 2016) ·············· 23

*Reed v. 1-800 Contacts, Inc.*,
    2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2 2014)··················· 15

*Reyes v. Educ. Credit Mgmt. Corp.*,
    322 F.R.D. 552 (S.D. Cal. 2017)···························· 9

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985)······························· 23

*Rodriquez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009)························· 11

*Ronquillo-Griffin v. Telus Communs., Inc.,*
    No. 17cv0129-JM-BLM,
    2017 U.S. Dist. LEXIS 99577 (S.D. Cal. June 27, 2017) ···················· 15

*Sabet v. Olde Discount Corp.,*
    2001 WL 1246860 (Ariz. Sup. Ct. 2001) ······························· 14

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ········································ 16

*Six Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ··································· 21, 22

*Spears v. First Am. Eappraiseit,*
    2015 U.S. Dist. LEXIS 57530 (N.D. Cal. Apr. 27, 2015) ··············· 17

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ········································ 11

*Sylvester v. CIGNA Corp.,*
    369 F. Supp. 2d 34 (D. Me. 2005) ···································· 17

*Torres v. Nutrisystem, Inc.,*
    289 F.R.D. 587 (C.D. Cal. 2013) ····································· 13

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ········································· 11

*Vess v. Bank of Am., N.A.,*
    No. 10cv0920-AJB-WVG,
    2013 U.S. Dist. LEXIS 157427 (S.D. Cal. Oct. 24, 2013) ·············· 12

*West Va. v. Chas. Pfizer & Co.,*
    440 F.2d 1079 (2d Cir. 1971) ········································ 13

*Wilson v. Aairborne, Inc.,*
    2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ·············· 17

*Zaw v. Nelnet Business Solutions, Inc.,*
    No. 3:12cv05788-RS (N.D Cal. Dec. 1, 2014) ························· 17

## STATUTES

28 U.S.C. § 1715 ·········································································· 6

Cal. Pen. Code § 630 ···································································· 1

Cal. Pen. Code § 632.7 ··························································· 3, 23

Cal. Pen. Code § 637.2(a) ·························································· 3

## RULES

Fed. R. Civ. P. 23(b)(3) ······················································ 3, 16

Fed. R. Civ. P. 23(c)(2)(B) ····················································· 16

Fed. R. Civ. P. 30(b)(6) ·································m············ 13, 14, 19

## OTHER

David R. Hodas,
  *Enforcement of Environmental Law in A Triangular Federal System: Can
  Three Not Be A Crowd When Enforcement Authority Is Shared by the
  United States, and Their Citizens?*,
  54 Md. L. Rev. 1552 (1995) ················································· 16

H. Newberg,
  *Newberg on Class Actions*, § 30.42 (4th ed. 2002 and Supp. 2004)·········· 20

The plaintiffs Kelissa Ronquillo-Griffen, Khoi Nguyen and Russell Smith (collectively the "Plaintiffs") seek final approval of this proposed class action settlement (the "Settlement Agreement," "Agreement," or "Agr.") with defendants Transunion Rental Screening Solutions, Inc. ("TURSS") and Transactel (Barbados), Inc. ("Transactel") (collectively the "Defendants"). Defendants do not oppose this motion.

## I.    INTRODUCTION

This Settlement is the culmination of over two years of litigation and provides for significant monetary and non-monetary relief for all the Settlement Class Members allegedly harmed by Defendants' telephone recording practices. The Settlement Agreement ("Agr.", filed at Dkt. No. 68-1[1]), reached after a day of mediation before Bruce A. Friedman of JAMS, provides for a considerable financial benefit of $425,000 in a common settlement fund ("Common Fund") to the approximately 662 Settlement Class Members[2] in California who were called by Transactel, on behalf of TURSS, in connection with a credit report inquiry whose calls were audio recorded allegedly without consent, in alleged violation of California's Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.*

The Settlement Fund to be created by Defendants is an all-in, non-reversionary fund (*see* Agr. § 2.1), with the Settlement Class receiving a monetary payment on a *pro rata* basis (*id.* at 2.4). The Settlement Class Member were afforded a reasonable opportunity to receive a *pro rata* share of the Settlement Fund by: (1) submitting an online claim via the Settlement Website, or (2) by

---

[1] Defined terms are used as defined in the Settlement Agreement.

[2] Plaintiffs previously estimated there were 665 Settlement Class Members. Dkt. No. 67-1, 4:4-7. Section G of the Recitals to the Settlement Agreement states that "[t]he Settlement Class is comprised of no more than approximately 670 persons." The Settlement Administrator received records from defense counsel for 669 persons, which included 7 duplicate records, for a new estimate of 662 Settlement Class Members. *See* Declaration of H. Jacob Hack ("Admin Decl."), ¶ 2.

Kazerouni Law Group, APC
Costa Mesa, California

submitting a Claim Form by mail to the Settlement Administrator. *See* Agr. §§ 2.4 and 4.3. The approximately 662 Settlement Class Members were informed of the Settlement by Mail Notice and the notice posted on the Settlement Website, after the Settlement Administrator performed a reverse telephone number lookup and obtaining address information from Defendants. *See* Agr. §§ 1(h) and 4.2.

As of March 27, 2019, after subtracting the requested combined award of attorneys' fees and costs, service awards to the three Class Representatives, and the estimated notice and administrative expenses from the Settlement Fund, each of the 73 valid claimants will be entitled to a settlement check of approximately $3,703.64. There are no objections to the Settlement or requests for exclusion.

As explained herein, this Settlement is fair, reasonable and adequate, and therefore should be given final approval.

## II.    BRIEF HISTORY SINCE PRELIMINARY APPROVAL

The Court granted preliminary approval of the proposed class action Settlement on November 1, 2018 (Dkt. No. 71). Class notice was provided on December 31, 2018. Admin Decl., ¶ 5. The deadline to submit a claim was March 11, 2019. *Id*. at ¶ 9. Likewise, the deadline to object or request exclusion from the settlement was March 11, 2019. *Id*. at ¶¶ 7 and 8.

Plaintiffs timely filed their Motion for Attorneys' Fees, Costs and Service Awards (the "Fee Brief") on February 8, 2019. Dkt. No. 72, p. 7, ¶ XIII.

Plaintiffs now submit this timely Motion for Final Approval of Class Action Settlement. Pursuant to Rule 23(e), the Plaintiffs seek final certification and approval of the proposed class action settlement, as well as approval of the Fee Brief. Specifically, Plaintiffs respectfully request that the Court enter a Final Approval Order submitted with this unopposed motion.

## III.   THE INVASION OF PRIVACY ACT AND CLASS ALLEGATIONS

The California State Legislature passed the California Invasion of Privacy Act ("CIPA") in 1967 to protect the right of privacy of the people of California,

**Kazerouni Law Group, APC**
Costa Mesa, California

replacing prior laws which permitted the recording of telephone conversations with the consent of one party to the conversation. California Penal Code § 632.7 was added to CIPA in 1992 due to specific privacy concerns over the increased use of cellular and cordless telephones. Section 632.7 prohibited intentionally recording all communications involving cellular and cordless telephones, without regard to whether they constitute confidential communications.

Plaintiffs allege that Defendants violated CIPA, specifically Cal. Pen. Code § 632.7, by contacting Plaintiffs and the Settlement Class (a California-only class) on their cellular telephones and audio recording the conversions without their knowledge or consent, and further that that Transactel is vicariously liable for the conduct of its vendor TURSS (Second Amended Complaint, (SAC), Dkt. No. 47, ¶¶ 21-39). Plaintiffs sought statutory damages of $5,000 per unlawfully recorded call, under Cal. Pen. Code § 637.2(a); SAC, ¶ 53.

## IV.   SETTLEMENT

In an earnest attempt to settle the action and avoid the risks inherent in proceeding to trial, the Parties discussed settlement on several occasions. As noted in the Preliminary Approval Motion (Dkt. No. 67-1, 17:8-13), the Settlement Agreement resulted from extensive arm's length negotiations, including a private mediation before Bruce A. Friedman of JAMS on March 23, 2018, as well as follow-up negotiations. Agr. § Section E to Recitals; Kazerounian Decl., ¶ 7. The Parties also conducted substantial discovery, including two rounds of written discovery, the depositions of the three named Plaintiffs, and confirmatory discovery following mediation. Ibey Decl., ¶¶ 6 and 8.

The time and effort spent on discovery and settlement negotiations, as well as the time spent in mediation with an experienced mediator, militate in favor of final approval of the proposed Settlement, as they strongly indicate there was no collusion. It has been over two years since this Action was filed on January 24, 2017. The efforts of Class Counsel to reach a compromise in the form of a

Kazerouni Law Group, APC
Costa Mesa, California

proposed class settlement proved fruitful, including a motion to dismiss (*see* Dkt. No. 27) and a discovery dispute motion (*see* Dkt. No. 56), the Parties were able to reach an understanding, the terms of which are memorialized in the Agreement.

### A.    The Fairness Hearing

At the Fairness Hearing scheduled for May 6, 2019, the Court will decide whether to finally approve the Settlement, and will also consider the Fee Brief (Dkt. No. 72-1). Agr. § 2.5; Preliminary Approval Order, § XIV.

### B.    THE Attorneys' Fees, Costs Application, And Service Awards

As explained in the Fee Brief, Class Counsel seek $123,250 in *combined* attorneys' fees and litigation costs, representing 29% of the $425,000 Settlement Fund (Agr. § 2.6(a)); and a service award in the amount of $3,000 to each of the three Class Representatives (*id.* at 2.6), to be distributed from the Settlement Fund. Plaintiffs respectfully request that the Court enter the proposed Final Approval Order submitted herewith, which includes a provision for the requested attorneys' fees, costs, service awards, and notice and settlement administration expenses.

### C.    Class Action Settlement Terms

This action has been certified, for settlement purposes only, as a California class action for settlement purposes only, providing for a $425,000 Settlement Fund.

#### 1.    <u>Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class</u>

The Settlement Class is defined as:

> All persons in California who, during the period from January 24, 2016 through February 8, 2017, were called by Transactel on behalf of TURSS on their cellular telephones and spoke with a representative.
>
> Excluded from the Settlement Class are the Judges to whom the Action is assigned and any members of the Judges' staff or immediate family.

Agr. § 1(y).

Kazerouni Law Group, APC
Costa Mesa, California

### 2.   $425,000 Settlement Fund

The Settlement establishes a fund of $425,000 paid by Defendants to resolve the claims at issue. *See* Agr. §§ 1(l) and 21.1. Payments from the Settlement Fund are in the form of a *pro rata* settlement check, which will be mailed to each of the Class Members who made a valid and approved claim. *See* Agr. § 2.4. KCC will send the Settlement Checks via U.S. mail no later than ninety (90) days after the ("Effective Date"), as provided under the Agreement. Agr. §§ 1(q) and 12.1.

Ninety-five (95) calendar days after the date the checks were issued, the Settlement Administrator shall void any outstanding checks, calculate the amount remaining in the Common Fund and, after reserving an amount for anticipated remaining settlement administration fees or costs, make a *pro-rata* distribution by check of the remainder of the Common Fund to those Authorized Claimants who have cashed their initial settlement checks provided, however, that no Authorized Claimant shall receive more than $5,000 under this Agreement. Agr. § 2.4.

The checks issued as part of this second distribution shall have a notation on them stating that they will be void after sixty (60) calendar days and, if any check is not cashed by an Authorized Claimant prior to sixty (60) calendar days after the check is issued, then the funds represented by that check shall remain part of the Common Fund. After the sixty (60) day period expires, the Settlement Administrator shall void any uncashed checks and distribute any remainder of the Common Fund to a *cy pres* recipient. Agr. § 2.4.  The Parties have recommended, and continue to recommend, that New Media Rights be approved by this Court as the contingent *cy pres* beneficiary. *See* Agr. § 10.

## V.   ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The Settlement Administrator's (Kurtzman Carson Consultants, LLC ("KCC")) compliance with the Agreement and the Preliminary Approval Order is described below.

Kazerouni Law Group, APC
Costa Mesa, California

**A.    CAFA Notice**

The CAFA notice was mailed on September 5, 2018 by Defendants, in compliance with 28 U.S.C. § 1715(b). Agr. § 14; Dkt. No. 69.

**B.    Class Notice**

KCC complied with the notice procedure set forth in the Preliminary Approval Order (Dkt. No. 71). After obtaining a list from Defendant with 669 records, KCC removed 7 duplicate records. Admin. Decl., ¶ 2.  KCC performed a reverse lookup on 210 records to find name and address information, and also updated all records based on the National Change of Address database. *Id*.

The direct mail notice informed the Settlement Class Members of the Settlement Website address (https://ronquilloclassactionsettlement.com/) where they could obtain further information about the Settlement and also make a claim online. *See* Admin. Decl., ¶ 5; Exhibit A thereto.  Settlement Class Members could also call the Settlement Administrator's toll-free telephone number to obtain information about the Settlement. Admin. Decl., ¶ 4.

On December 31, 2018, KCC mailed the class notice to 611 individuals. Admin Decl., at ¶ 5. As of March 27, KCC received a total of 89 returned Notice Packets, but was able to locate 20 updated addresses and promptly re-mailed the notice to those addresses.  *Id*. at ¶ 6. This amounts to a direct mail notice reach of approximately 81.9% (*id*. at ¶ 6), which as explained below is consistent with the benchmark set by the Federal Judicial Center.

**C.    Detailed Notice Posted On The Settlement Website**

KCC posted on the Settlement Website the detailed and full notice in a question and answer format, which explained the case, the proposed settlement and each Class Member's options regarding the proposed settlement. *See* Admin. Decl., ¶ 3.  Among other things, the website contains the Settlement Agreement, Second Amended Complaint, the Preliminary Approval Order, a downloadable claim form, and the Fee Brief. *Id*.; *see also* Exhibit A to Ibey Decl., ¶ 14. The

Kazerouni Law Group, APC
Costa Mesa, California

Settlement Website provided notice of the proposed Settlement to the Class Members, in addition to the other aspects of the Settlement Class Notice Program.

### D.   Toll-Free Phone Number

On December 31, 2018, KCC established a toll-free telephone number that Settlement Class Members could call and could ask a live operator questions about the Settlement and request a claim form be sent to them. Admin. Decl., ¶ 4.

### E.   Claims Procedure, Including Expenses, and Claims Received

KCC prepared a class list based on records obtained from Defendants. Admin. Decl., ¶ 2. Class Members were provided no less than seventy (70) days to make a claim for a Settlement payout. *See* Admin. Decl., ¶¶ 5 and 9; *see also,* Agr. § 6.2 (i.e., 130 days after the Preliminary Approval Order was issued). Ultimately, KCC has successfully delivered 542 mailings. *See id.* at ¶ 9.

The procedure for submitting a claim was made as easy as possible – a claim form could be submitted online via the Settlement Website or by U.S. Mail.  *See* Agr. § 4.3; *see also*, Exhibit A to Admin Decl.  All that was required was the Class Member's full name and address, the cellular telephone number called during the Class Period, and their social security or taxpayer identification number. Agr. § 4.3. Settlement Class Members were required to affirm that they actually spoke with a representative of Defendants during the phone call. *Id.*

KCC has received 83 total claims as of March 9, 2019 (59 submitted online, and 24 submitted by mail). Admin. Decl., ¶ 21. Of those claims, 73 are valid, 1 is duplicative, and 9 are deficient. This equates to claims rate for valid claims of approximately 11.02% from the approximately 662 Settlement Class Members. A deficiency letter will be mailed to the 9 individuals who submitted deficient claims, and those individuals were sent a deficiency notice by KCC and afforded 14 days to cure. *See* Admin. Decl., ¶ 9.

KCC will issue awards in the form of settlement checks within ninety days of the Effective Date to valid claimants. Agr. § 12.1. The settlement checks will

Kazerouni Law Group, APC
Costa Mesa, California

expire 90 days after issuance.  *Id*. at § 2.4.

### 1.   <u>No objections; No requests for exclusion</u>

Class Members were permitted to opt-out or to submit an objection. *See* Agr. §§ 7 and 8; Admin Decl., ¶¶ 7 and 8. As of March 27, KCC has received zero requests for exclusion, and there are no objections to the Settlement. *Id*.   The deadline to submit a request for exclusion or object was March 11, 2019.  *Id*. at ¶¶ 7 and 8. The fact that there are no objections and no exclusion requests out of approximately 662 Settlement Class Members highly supports the adequacy of the proposed Settlement. *In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

### 2.   <u>Settlement checks</u>

The net settlement fund available to pay Class Members is estimated to be $270,366, which was determined by subtracting the anticipated combined Class Representative service awards totaling $9,000 ($3,000 each), Class Counsels' requested combined attorneys' fees and costs of $123,250[3] (29% of the total Common Fund), and the notice and claims administration expenses estimated to be $22,384.00, from the Common Fund. *See* Admin. Decl., ¶ 10.  Based on the net settlement funds and the currently 73 valid claims, each valid claimant would receive a check for approximately $3,703.64[4] from this Settlement.[5]

---

[3] Class Counsels' litigation costs were $8,706.81 as of the Fee Brief. Dkt. No. 72-1, n. 7 and 22:10.  Subsequently, Class Counsel incurred costs of $17.03 to deliver a courtesy of the Fee Brief to the Court and perform a docket search (Swigart Decl., ¶ 7), and they will continue to incur additional costs through the final approval hearing, including to attend the hearing and provide a courtesy copy to the Court of this present motion (*id*.).

[4] $425,000 (Common Fund) - $123,250 (Attorneys' fees and Costs combined) – $22,384.00 (Estimated Notice and Administration Expenses) - $9,000 (Service

Due to the economics of individually suing for statutory damages of $5,000 under Cal. Pen. Code § 637.2, none of the Class Members would likely be able to obtain such recovery on their own. *See Reyes v. Educ. Credit Mgmt. Corp.*, 322 F.R.D. 552, 564 (S.D.Cal. 2017) ("Under these circumstances, $5,000 for each violation is unlikely to incentivize the average claimant to incur the opportunity costs of time, effort, and attention to pursue her claim on an individual basis.") (citations omitted).

## VI.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate.

### A.   The Settlement Satisfies The Requirements of Fed. R. Civ. P. 23

The Court has preliminarily ruled that this proposed Settlement satisfies the Rule 23 requirements. See Preliminary Approval Order, Dkt. No. 71, § IX. The Rule 23(a) and (b) factors were previously analyzed and applied by Plaintiff in his Motion for Preliminary Approval (Dkt. No. 67-1, pp. 9-13). There is no reason such findings should be disturbed. Since preliminary approval, Plaintiffs have continued to serve as adequate Class Representatives by reviewing documents and submitting declarations in support of the Fee Brief; and Plaintiffs support final approval of the proposed settlement. *See* Kazerounian Decl., ¶ 8; Declaration of Kelissa Ronquillo-Griffin ("Ronquillo Decl."), ¶¶ 2-4; Declaration of Khoi Nguyen ("Nguyen Decl."), ¶¶ 2-4; Declaration of Russell Smith ("Smith Decl."), ¶¶ 2-4. Also, Class Counsel have continued to adequately represent the interests of the

---

Awards) = $270,366.  $270,366 / 73 (valid claims to date) = Approx. $3,703.64.

[5] In the Preliminary Approval Motion filed on August 27, 2018, the estimated individual claim award was $4,035, which was based on an anticipated claims rate of 10%. Dkt. No. 67-1, 4:17-21.

Kazerouni Law Group, APC
Costa Mesa, California

Settlement Class Members and the named Plaintiffs, having, among other things, timely filed the Fee Brief on February 8, 2019 (Dkt. No. 72) and assisted with settlement administration (Ibey Decl., ¶ 5).

### B.     The Settlement Should Be Finally Approved By The Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).   The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.   The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. See *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

Kazerouni Law Group, APC
Costa Mesa, California

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).   The district court must exercise "sound discretion" in approving a settlement. See *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the proposed settlement should be finally approved. This Settlement was reached with the assistance of experienced mediator, Bruce A. Friedman, Esq.[6] of JAMS, which further demonstrates a lack of collusion between the Parties. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011).   Based on the facts of this case, Class Counsel and the Plaintiffs agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Kazerounian Decl., ¶ 8; Swigart Decl., ¶ 11; Ibey Decl., ¶ 13; Shay Decl., ¶ 11.

---

[6] *See* https://www.jamsadr.com/bruce-friedman; *see also*, *Vess v. Bank of Am., N.A.*, No. 10cv0920 AJB (WVG), 2013 U.S. Dist. LEXIS 157427, at *4 (S.D. Cal. Oct. 24, 2013 (granting final approval of a TILA violation action, following a mediation conducted by Bruce A. Friedman).

Kazerouni Law Group, APC
Costa Mesa, California

1.  **The strength of the Lawsuit and the risk, expense, complexity, and likely duration of further litigation**

Defendants have raised numerous defenses to the Plaintiffs' claims and putative class claims. Dkt. Nos. 52 and 53; *see also*, Recitals to Agr. Defendants contend that their defenses have merit and would defeat the claims of the putative class. See Recitals to Agr. However, this California-only settlement eliminates any further risk and expense for the Parties.

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by both sides, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Id*.

While Class Counsel believe strongly in the merits of the claims brought on behalf of the proposed Class (*see* Recitals to Agr.), they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit. Some courts have denied motions for class certification of CIPA actions, *see e.g.*, *Torres v. Nutrisystem, Inc.* 289 F.R.D. 587 (C.D.Cal. 2013), whereas others have granted class certification of CIPA claims on contested motions, *see e.g.*, *Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468-CAS(MANx), 2014 U.S. Dist. LEXIS 129689 (C.D.Cal. Sep. 8, 2014).

Even if Plaintiffs were to prevail at trial, risks would remain. See *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), aff'd, 440 F.2d 1079

(2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

The risks in this action were explained in detail in the Preliminary Approval Motion (Dkt. No. 67-1, pp. 18-19) and Fee Brief (Dkt. No. 72, pp. 12-13). If the Action were to continue without settlement, Defendants would continue to vigorously defend the action. *See* Agr. § 15; Recital D. Prior to settlement, Defendants intended to challenge each Plaintiff's credibility and adequacy of serving as Class Representatives. Similarly, Defendant TURSS also contends, and would likely challenge, that Transactel is an independent contractor, and thus TURSS is not vicariously liable for Transactel's conduct.

Further, if litigation were to continue, Plaintiffs would take the Rule 30(b)(6) deposition of both Defendants, and would have obtained additional written discovery responses from TURSS which Plaintiffs believe would have provided additional evidence to support a finding of vicarious liability. Defendants would have likely argued against class certification on the basis that some of the persons called may not have been in California at the time of the calls, even though they had a California area code, and would thus not have standing to bring a claim for violation of this California statute. But settlement avoids these risks to both sides.

To fully prosecute this case through trial, the Parties would need to: 1) continue litigating their discovery disputes;[7] and, 2) undertake the arduous task of certifying or opposing a class action, which could significantly impact both Parties (i.e., the class may not be certified thereby eliminating any class relief, or the class

---

[7] Specifically, Plaintiff would argue that Transactel did not fully comply with Judge Major's discovery order in terms of the number of "audio recorded *conversations*" (emphasis added), where the discovery response following the order was limited to the number of audio recording files. *See* Dkt. No. 56, pp. 9-10. Additionally, based on discussions between the parties, Plaintiffs believe it is likely that Transactel would bring a discovery dispute challenging whether certain redactions by Plaintiffs in discovery were appropriate.

Kazerouni Law Group, APC
Costa Mesa, California

*Ronquillo-Griffin v. Telus Communs., Inc.*, No. 17cv129 JM (BLM), 2017 U.S. Dist. LEXIS 99577, at *20 (S.D.Cal. June 27, 2017) (recognizing that CIPA provides for statutory damages of $5,000 per violation).  Attorneys' fees would have to be sought under California Code of Civil Procedure § 1021.5, if successful in bringing an action which has resulted in the enforcement of an important right affecting the public interest, among other requirements.

The relief afforded to the Settlement Class Members here exceeds the relief afforded in many other CIPA class action settlements. *See e.g.*, *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255, *17-18 (S.D. Cal. Jan. 2, 2014) (granting final approval of CIPA class action settlement of $600 per class member, and collecting cases approving CIPA settlements between $10-$50 per class member); *Mirkarimi v. Nev. Prop. 1, LLC*, No. 12-CV-2160, 2015 U.S. Dist. LEXIS 112680, *10-11 (S.D. Cal. Aug. 24, 2015) (granting preliminary approval of CIPA settlement with estimated pro-rata award of $64.47); *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818, 2015 U.S. Dist. LEXIS 85084, *27-29 (N.D. Cal. June 30, 2015) (collecting cases approving CIPA settlements of $1-$7.50 per class member); *Nader v. Capital One Bank (USA), N.A.*, No. 12-cv-01265 DSF, 2014 U.S. Dist. LEXIS 194211, 2014 WL 12584442, Docket No. 145 (C.D. Cal. Nov. 17, 2014) ($3 million settlement for approximately 1,896,044 potential class members, or $1.58 per person); *Hoffman v. Bank of America, N.A.*, No. 12-cv-00539 DHB, Docket Nos. 56-1, 67 (S.D. Cal. Nov. 6, 2014) ($2.6 million settlement for approximately 1,454,181 potential class members, or $1.79 per person); *Cohorst v. BRE Properties, Inc.*, No. 10-cv-2666-JM, 2011 U.S. Dist. LEXIS 151719, 2012 WL 153754, Docket Nos. 101, 109 (S.D. Cal. 2012) ($5.5 million settlement for approximately 1,170,584 potential class members, or $4.70 per person); *Miller v. Hitachi Am.*, No. CIV 526430, 2014 Cal. Super. LEXIS 1686 (San Mateo Oct. 17, 2014) (granting preliminary approval of CIPA class action settlement with different settlement classes receiving $20 or $145 per class member).

Kazerouni Law Group, APC
Costa Mesa, California

Therefore, the estimated recovery provided by this settlement is much greater than in many other finally approved CIPA class action settlements.  The persons not in the Class could not file a claim for a monetary payment, but will also likely benefit from the Settlement because the Settlement will serve as a deterrent to future violations of the CIPA, and TURSS has instructed Transactel to cease audio recording calls (Agr. § 2.8). *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").

### 3. Class Members were provided with the best notice practicable, which afforded them an opportunity to choose whether to participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).

According to the KCC, there is a direct mail notice reach of approximately 81.9% of the estimated 662 Settlement Class Members, after performing a reverse phone number lookup and updated records based on the National Change of Address database (Admin Decl., ¶¶ 2 and 6),[9] which satisfies due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also, Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of

---

[9] *See generally, Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC(KSC)) 2014 U.S. Dist. LEXIS 49838, at *27 (S.D.Cal. Apr. 9, 2014) (approving use of reverse phone number lookup in a consumer class action settlement).

Kazerouni Law Group, APC
Costa Mesa, California

settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement); *Spears v. First Am. Eappraiseit*, No. 5-08-CV-00868, *32-34 (RMW), 2015 U.S. Dist. LEXIS 57530 (N.D.Cal. Apr. 27, 2015) (finally approving settlement which provided for class notice via direct mail after updated addresses through the National Change of Address database, a settlement website and an IVR phone line).

This is a consumer case and consequently subject to lower claims rates than other types of cases. *See e.g.*, *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d. 34, 44 (D. Me. 2005) (Signal, C.J.) ("'Claims made' settlements regularly yield response rates of 10 percent or less."). *See also, Forcellati v. Hyland's Inc.*, No. 12-cv-1983, 2014 U.S. Dist. LEXIS 50600, *17 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *Mount v. Wells Fargo Bank, N.A.*, BC395959 (Cal. Super. Ct. Aug. 13, 2014) granting final approval of a CIPA class action settlement with a 4.2% claiming rate) [Exhibit B to Ibey Decl., ¶ 15]; *Zaw v. Nelnet Business Solutions, Inc.*, No. 3:12-cv-05788-RS, Dkt. No. 39 (N.D.Cal. Dec. 1, 2014) (granting final approval of a CIPA class action settlement with a 1.8% claiming rate) [Exhibit C to Ibey Decl., ¶ 16]. Here, there was a valid claims rate of 11.02% (*see* Admin Decl., ¶ 9 – 73 valid claims out of 662 Settlement Class Members), which is slightly higher than expected (*see* Dkt. No. 67-1, 20:16-17).

It is also well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not,

Kazerouni Law Group, APC
Costa Mesa, California

in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (approving a settlement that comprised one-sixth of plaintiffs' potential recovery); *Jaffe v. Morgan Stanley & Co.*, No. 06-cv-3903-THE, 2008 U.S. Dist. LEXIS 12208, 2008 WL 346417, *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.").

As the *Linder* Court explained, "…it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce several salutary by-products, including a therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to the judicial process of the burden of multiple litigation involving identical claims." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations omitted).

### 4. <u>The extent of discovery completed</u>

The proposed Settlement is the result of arm's-length and contentious negotiations, including a private before experienced mediator Bruce A. Friedman of JAMS, as well as follow-up discussions and confirmatory discovery. *See* Section E of the Recitals to the Agr.; Agr. § 28; *see also*, Ibey Decl., ¶¶ 6 and 8; Kazerounian Decl., ¶ 7; Shay Decl., ¶ 8. Prior to settlement, the parties conducted considerable written discovery. Specifically, Plaintiffs served two rounds of written discovery on Defendants, and both Defendants served written discovery requests on the Plaintiffs. Ibey Decl. ¶ 6. The depositions of the three named Plaintiffs were taken by defense counsel. *Id.* at ¶ 6. Plaintiffs also sought to take the Rule 30(b)(6) depositions of both Defendants, but took those depositions off calendar in light of

Kazerouni Law Group, APC
Costa Mesa, California

settlement discussions. Ibey Decl., ¶ 6. Further, Plaintiffs obtained confirmatory discovery following the mediation. Ibey Decl., at ¶ 8. Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745. The Parties have exchanged sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Moreover, there are important factual issues in dispute, such as: i) whether Transactel's employees advised any of the Settlement Class Member that the call was being recorded; and ii) whether the Settlement Class Members were located within California at the time of the calls. There is also the legal question of whether TURSS is vicariously liable for the audio recordings made by its hired vendor Transactel in light of the contention by Defendants that Transactel was an independent contractor.

### 5.   The experience and views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979).  The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel.  See *M. Berenson Co*., 671 F. Supp. at 822; Ellis, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

It is the considered judgment of Class Counsel experienced in CIPA class action litigation that this settlement is a fair, reasonable and an adequate settlement benefiting approximately 662 Settlement Class Members. Kazerounian Decl., ¶ 8; Swigart Decl., 11; Ibey Decl., ¶¶ 12-13. Class Counsel are experienced consumer class action lawyers. Kazerounian Decl., ¶ 8; Swigart Decl., ¶ 11; Ibey Decl., ¶¶

Kazerouni Law Group, APC
Costa Mesa, California

13; Shay Decl., ¶ 11; *see also*, Dkt Nos. 67-2, 67-12, 67-13, and 67-14.[10]

This Settlement was negotiated without collusion by experienced and capable Class Counsel who now recommend its approval. *See* Section E to Recitals to Agr.; Dkt. No. 72-2, ¶¶ 22-60; Dkt. No. 72-7, ¶¶ 19-26, and Dkt. No. 72-8, ¶¶ 11-15; Dkt. No. 72-9, ¶¶ 11-22. Class Counsel have achieved such a result here in this CIPA class action, and unequivocally assert that the proposed Settlement should receive final approval. Kazerounian Decl., ¶ 8; Swigart Decl., ¶ 11; Ibey Decl., ¶ 13; Shay Decl., ¶¶ 8 and 11.

## 6. <u>The reaction of Class Members to the Settlement</u>

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms*., 221 F.R.D. at 529 (citations omitted); *see also*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013).

Here, the fact that there are no objections and no requests for exclusion (Admin Decl., ¶¶ 7 and 8) is important in evaluating the fairness, reasonableness and adequacy of the settlement – which supports approval of the settlement here. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the [TCPA] Settlement."); *Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *6 (C.D.Cal. Oct. 23, 2017) (granting final approval of a CIPA settlement where there were only 7 opt-outs and 1 objection). Thus, there has been no resistance to the

---

[10] *See also*, *Barani v. Wells Fargo Bank, N.A*., No. 12CV2999-GPC (KSC), 2014 U.S. Dist. LEXIS 49838, at *7-8 (S.D. Cal. Apr. 9, 2014) (noting Kazerouni Law Group, APC and Hyde & Swigart's experience in consumer class actions); *Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774, at *16 (S.D. Cal. Oct. 13, 2016) (same).

Kazerouni Law Group, APC
Costa Mesa, California

Settlement. Also, the Class Representatives support the motion for final approval of class action settlement. Ronquillo Decl., ¶ 4; Nguyen Decl., ¶ 4; Smith Decl., ¶ 4.

## VII. APPROVAL OF POTENTIAL CY PRES DISTIBUTION

As explained above, the Parties propose in the Settlement Agreement that unclaimed funds after a second distribution be awarded to the charitable organization New Media Rights. Agr. § 10.

### A. *Cy Pres* Distribution of Uncashed Checks After Any Second Settlement Distribution

Consistent with the terms of the approved Settlement Agreement (Section 10), Plaintiffs request that funds remaining in the Common Fund after any second distribution be awarded to the Parties' proposed *cy pres* recipient, New Media Rights. New Media Rights, founded in 2006, is a program of California Western School of Law that offers pro bono preventative privacy related legal services for consumers, nonprofits, technology entrepreneurs, and creators across the United States. *See* Exhibit A to Kazerounian Decl. (Declaration of Art Neill ("Neill Decl."), p. 1).

The *cy pres* doctrine allows a court to distribute unclaimed portions of a class action settlement fund to the "next best" class of beneficiaries. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir. 1990). The Ninth Circuit directs courts to consider the following factors in determining whether awards to the proposed *cy pres* beneficiary are appropriate: (1) the nature of the plaintiffs' lawsuit; (2) the objectives of the underlying statutes; and (3) the interests of the silent class members, including their geographic diversity. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011).

### B. Guidance from the Ninth Circuit

While the Court has discretion in determining the above factors, a review of relevant Ninth Circuit precedent reveals when *cy pres* recipients fail to satisfy those standards. In *Six Mexican Workers v. Arizona Citrus Growers*, a class of

undocumented Mexican farm workers sued various companies for violations of the Farm Labor Contractor Registration Act. *Six Mexican Workers*, 904 F.2d at 1303. The court found the defendants liable for $1.8 million in statutory damages, which the Ninth Circuit later reduced to $850,000. *Id*. at 1303–04, 1310. The court also identified the Inter-American Fund, which provided humanitarian aid in Mexico, as the *cy pres* recipient of any unclaimed funds. *Id*. at 1304.

On review, the Ninth Circuit held that the *cy pres* distribution was not appropriate because there was "no reasonable certainty" that any class member would benefit from it, even though the money would go "to areas where the class members may live." *Id*. at 1308. The Ninth Circuit Court also recognized the lack of relation between the choice of charity and the class claims. In its analysis, the Court reasoned that while the purpose of the statute was to compensate victims of unscrupulous employers and to deter future violations, the Inter-American Fund was "not an organization with a substantial record of service nor [was] it limited in its choice of projects," and any distribution would therefore have required court supervision "to ensure that the funds [were] distributed in accordance with the goals of the remedy." *Id*. at 1309.

Ultimately, the Court reversed the *cy pres* distribution because "the district court's application [of the *cy pres* doctrine] was inadequate to serve the goals of the statute and protect the interests of the silent class members." *Id*. at 1312.

## C. New Media Rights Is an Appropriate *Cy Pres* Recipient

The Court should approve New Media Rights as appropriate *cy pres* recipient in this cell phone privacy action to receive any unclaimed funds, following any second distribution to the Settlement Class Members.

### 1. <u>Nature of the Lawsuit</u>

This lawsuit was brought to obtain statutory damages for alleged violations of California's Invasion of Privacy Act, on behalf of Plaintiffs and the absent class members in California whose cell phone conversations were recorded allegedly

without their consent.  *See* SAC, ¶¶ 1, 30-31, 33 (Dkt. No. 47).  Providing a *cy pres* award to the proposed beneficiaries to foster protection of consumer privacy interests is in line with the nature of the CIPA lawsuit.

### 2.   Objective of Invasion of Privacy Act

CIPA is designed to protect the right to privacy of Californians. See *Ribas v. Clark*, 38 Cal. 3d 355, 365, 212 Cal. Rptr. 143, 696 P.2d 637 (1985) ("In view of the manifest legislative purpose to accord every citizen's privacy the utmost sanctity, [CIPA's private right of action] was intended to provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating their right."); *see also*, *Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2016 U.S. Dist. LEXIS 181819, at *7 (C.D.Cal. Dec. 19, 2016) ("as to legislative judgment, the California Legislature specifically enacted CIPA to protect against the invasion of privacy.") California Penal Code § 632.7 specifically protects against the invasion of privacy with regard to telephones, including cell phones.

### 3.   Interest of silent Class Members

The interests of the silent class members would be advanced through a *cy pres* award to New Media Rights.

New Media Rights sits on the Federal Communications Commission's Consumer Advisory Committee. Specific examples of work performed by New Media Rights. See Exhibit A to currently filed Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶ 9 (Declaration of Art Neill on pages 2-4).

Art Neill is the Executive Director and Founder of the New Media Rights program at California Western School of Law. The work that New Media Rights does with smaller entities and creators has a direct impact on curbing privacy abuses by helping to negate the need for lengthy and expensive litigation and FTC enforcement actions. *Id*. New Media Rights has institutional partners and a proven record in the privacy space. *Id*.

Kazerouni Law Group, APC
Costa Mesa, California

New Media Rights consistently receives funding from multiple grantors and over 200 individuals each year. The California Consumer Protection Foundation partnered with New Media Rights on three consumer privacy related grants ranging from $50,000 to $100,000. *Id*. These grants supported their preventative legal services, including one-to-one services, education, and advocacy. These funds will be used to continue and expand consumer privacy related efforts. *Id*.

On February 22, 2017, Judge Gonzalo P. Curiel approved a *cy pres* distribution of unclaimed settlement funds in the amount of approximately $51,000 to New Media Rights in the finally approved TCPA class action settlement (involving privacy rights relating to cell phones) entitled, *Barani v. Wells Fargo Bank, N.A*., No. 12-cv-02999-GPC-KSC (S.D. Cal.). Kazerounian Decl., ¶ 7; Exhibit B thereto.

At the hearing in that matter on January 20, 2017, Judge Curiel stated:

I have reviewed the request to designate New Media Rights as the appropriate cy pres recipient. I agree with the parties with respect to their analysis as to a proper cy pres recipient that, given the nature of the lawsuit, the consumer privacy interests that are at play, the business or the rights that are protected by New Media Rights, that there's a proper nexus. There's a good fit. And so that, ultimately, by this cy pres award, we would be indirectly benefiting the members of the class.

[Exhibit C to Kazerounian Decl., ¶ 8 (p. 5, lns. 5-13 of hearing transcript)].

Lastly, Class Counsel are unaware of any conflicts of interest with regard to New Media Rights as the contingent *cy pres* recipient of any unclaimed settlement funds after any Second Distribution. Kazerounian Decl., ¶ 6; Ibey Decl., ¶ 11; Swigart Decl., ¶ 10; Shay Decl., ¶ 10.

## VIII. CONCLUSION

In sum, the Parties have reached this Settlement following good and contentious negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Settlement Class Members who were

afforded notice that complies with due process.

For the foregoing reasons, Plaintiffs respectfully request the Court:

- Grant final approval of the proposed settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorney's Fees, Costs and Service Awards;
- Enter the proposed final approval order submitted herewith; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Dated: March 28, 2019       **KAZEROUNI LAW GROUP, APC**

By: /s/ Abbas Kazerounian
     ABBAS KAZEROUNIAN, ESQ.
     AK@KAZLG.COM
     *Attorney for Plaintiffs*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq.
yana@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Counsel for Plaintiffs*

**LAW OFFICE OF DANIEL G. SHAY**
Daniel G. Shay, Esq. (250548)
danielshay@tcpafdcpa.com
409 Camino Del Rio South, Suite 101B
San Diego, CA 92108
Telephone: (619) 222-7429
Facsimile: (866) 431-3292
*Counsel for Plaintiffs*

Kazerouni Law Group, APC
Costa Mesa, California