UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELISSA RONQUILLO-GRIFFIN; KHOI NGUYEN; and RUSSELL SMITH, Plaintiffs, v. TRANSUNION RENTAL SCREENING SOLUTIONS, INC. and TRANSACTEL (BARBADOS), INC., Defendants. | Case No.: 17cv129 JM (BLM) **ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |

Plaintiffs Kelissa Ronquillo-Griffin, Khoi Nguyen, and Russell Smith filed unopposed motions for final approval of a proposed class action settlement (Doc. No. 73), and for attorneys' fees, costs, and service awards (Doc. No. 72). For the reasons discussed below, the motion for final approval is granted and the motion for attorneys' fees, costs, and service awards is granted in part.

## BACKGROUND

This is a putative class action arising out of Defendants' alleged recording of calls to class members without their permission, in violation of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, et seq. Plaintiffs filed this action on January 24, 2017. On June 27, 2017, the court granted in part and denied in part Defendants' motion

to dismiss Plaintiffs' First Amended Complaint, granting Plaintiffs leave to amend. (Doc. No. 27.) On November 28, 2017, Plaintiffs filed a Second Amended Complaint ("SAC") alleging one count of violation of California Penal Code § 632.7 against Defendants TransUnion Rental Screening Solutions, Inc. ("TURSS") and Transactel Barbados, Inc. ("Transactel"). (Doc. No. 47.) The crux of the SAC is that in December 2016, Transactel, acting on TURSS's behalf, called class members who had requested copies of their credit reports from TURSS and recorded those calls without consent. CIPA permits civil plaintiffs to recover three times the amount of damages they suffered or $5,000, whichever is greater, for recording telephone conversations without consent. Cal. Penal Code § 637.2. Suffering actual damages is not a prerequisite to recovery. Id.

On March 26, 2018, after two years of litigation and immediately following private mediation, the parties filed a notice of settlement. (Doc. No. 60.) The parties' Settlement Agreement (Doc. No. 68-1) establishes a $425,000 non-reversionary common fund. The common fund is allotted as follows: Named Plaintiffs each receive a service award of $3,000 ($9,000 total for all Plaintiffs). Class counsel may apply for a fee and cost award no greater than $123,250 (29 percent of the common fund). Claims administration costs were estimated at $22,384. The remainder of the common fund is divided equally among class members that submit valid claims. Plaintiffs previously estimated that class members would each receive a minimum award of $406.56 (if all 665 people in the estimated class submit valid claims) and in any event will receive a maximum award of $5,000. In light of the 73 valid claims submitted, Plaintiffs now estimate that each class member will receive $3,703.64. If funds remain after all distributions are made, the settlement administrator will make a *cy pres* payment of all remaining funds to the nonprofit organization New Media Rights.

On August 27, 2018, Plaintiffs filed an unopposed motion for preliminary approval of class action settlement and certification of settlement class. (Doc. No. 67.) The court granted the motion and preliminarily approved the settlement on November 1, 2018. (Doc.

No. 71.)  No class members objected or opted out of the settlement.  The court held a final approval hearing on May 6, 2019.

## MOTION FOR FINAL APPROVAL

Following the final approval hearing, which included an evidentiary hearing, the court grants Plaintiffs' motion for final approval of the settlement.

## I.    Class Certification for Settlement Purposes

On November 1, 2018, the court preliminarily and conditionally certified the following class for settlement purposes—

> All persons in California who, during the period from January 24, 2016 through February 8, 2017, were called by Transactel on behalf of TURSS on their cellular telephones and spoke with a representative.  Excluded from the Settlement Class are the Judges to whom the Action is assigned and any members of the Judges' staff or immediate family.

(Doc. No. 71 at 3.)[1]  The court finally certifies this class for settlement purposes.

Rule 23(e) contemplates that the parties to an action may agree, as part of the settlement, to certify a class.  In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).  When considering a motion for approval of a Rule 23 class action the court must perform the threshold task of certifying the class.  See generally Millan v. Cascade Water Servs. Inc., 310 F.R.D. 593, 602-07 (E.D. Cal. 2015).  The Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Additionally, the Court must determine whether class counsel is adequate and whether "the action is maintainable

---

[1] All page citations in this order refer to those generated by the court's CM/ECF system.

under Rule 23(b)(1), (2), or (3)." <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 462 (9th Cir. 2000) (quoting <u>Amchen Prod. v. Windsor</u>, 521 U.S. 591, 614 (1997)).

## A. Numerosity

This requirement is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement. . . ." <u>Waller v. Hewlett-Packard Co.</u>, 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing <u>Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.</u>, 249 F.R.D. 334, 346 (N.D. Cal. 2008)). Here, notice packets were mailed to 611 potential class members. (Doc. No. 73-15, Admin. Decl. ¶ 5.) Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement is met.

## B. Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009). Here, the commonality requirement is satisfied because all of the class claims involve common questions of law and fact surrounding whether Defendants recorded class members' calls without their permission.

## C. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citation omitted). Here, the typicality requirement is satisfied because the claims of lead Plaintiffs and the class are the same. The wrongful conduct alleged in the complaint is not unique to the class

4

representatives, and the damages to the class members, if any, are similar insofar as they relate to violations of CIPA.

### D. Adequacy of Class Representative and Class Counsel

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the court to address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 462. A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id. at 23(g)(1)(B). Ultimately, when only one applicant seeks appointment as class counsel, the court must determine that "[c]lass counsel . . . fairly and adequately represent the interests of the class." Id. at 23(g)(4).

Here, Plaintiffs do not have any known conflicts of interest with other class members. (Doc. No. 73-2, Kazerounian Decl. ¶ 5; Doc. No. 73-8, Ibey Decl. ¶ 10; Doc. No. 73-6, Swigart Decl. ¶ 9; Doc. No. 73-7, Shay Decl. ¶ 9.) There are no obvious conflicts between Plaintiffs' interests and those of the class members. Additionally, class counsel do not have any known conflicts with Plaintiffs. (Id.)[2] Furthermore, no class member has filed an objection challenging the adequacy of the representative parties. The court is unaware of any reason that would warrant altering its earlier determination that Plaintiffs

---

[2] In addition, at the final approval hearing, class counsel represented that class counsel does not have any known conflicts with class members.

and class counsel can adequately represent the interest of the class. Accordingly, this element is satisfied for the purposes of certification of the settlement class.

**E. Predominance and Superiority**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." Hanlon, 150 F.3d at 1022. "Rule 23 (b)(3) permits a party to maintain a class action if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Conn. Ret. Plans & Trust Funds v. Amgen Inc., 660 F.3d 1170, 1173 (9th Cir. 2011), aff'd, 133 S. Ct. 1184 (2013) (citing Fed. R. Civ. P. 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022-23 (quoting Amchen Prods, Inc., 521 U.S. at 623). It requires an examination into whether there are "legal or factual questions that qualify each class member's case as a genuine controversy." Id. The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Id. at 123.

Here, as the court preliminarily found, the proposed class meets the requirements of Rule 23(b)(3). All of the class members were allegedly subject to Defendants' purported CIPA violations. The legal and factual questions common to each class member's claim predominate over any questions affecting individual class members. The common questions of whether Defendants recorded class members' calls without their permission and whether Defendants failed to provide a call recording disclosure at the beginning of the call predominate over individual questions. A class action is superior to other forms of adjudication because the class consists of approximately 665 people, does not present management issues, and likely damage awards to individual plaintiffs are relatively small compared to the burden and expense of individual litigation. Accordingly, the

predominance and superiority inquiries are satisfied. The court certifies the class for settlement purposes.

## II.    Final Approval of Settlement

Where, as here, a settlement is reached prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class, therefore "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." <u>In re Bluetooth Headset Products Liability Litigation</u>, 654 F.3d 935, 946 (9th Cir. 2011).

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1025 (9th Cir. 1998). The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." <u>Id</u>. at 1026. In making this determination, the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." <u>Lane v. Facebook, Inc.</u>, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." <u>Hanlon</u>, 150 F.3d at 1027.

In assessing a settlement proposal, the district court is required to balance a number of factors, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

<u>Id</u>. at 1026.

## A. Adequacy of Notice

The court approved notice of this class action and proposed settlement in the Preliminary Approval Order. (Doc. No. 71.) The claims administrator directly mailed 611 notice packets to class members,[3] created a settlement website that contained the terms of the settlement and allowed class members to submit a claim, and established a toll-free telephone number claimants could call to obtain information about the settlement. The notice sent to class members clearly explains how to opt out of the class or object to the settlement and fairly summarizes the parties' settlement agreement. (See Doc. No. 67-3, Exh. A at 43-49.) The website clearly explains the settlement and contains the Settlement Agreement, Preliminary Approval Order, a claim form, and motion for attorney's fees. Class members had 70 days to serve objections after the class notice was mailed. No class members objected to the settlement or the adequacy of the notice, and no class member requested exclusion from the class. Accordingly, the class received adequate notice.

## B. Strength of Plaintiffs' Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status

As a result of the preferable nature of settlement over the uncertainties, expense and length of litigation "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." Four in One Co. v. S.K. Foods, L.P., No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the parties reached an agreement after two years of litigation. Defendants vigorously contested Plaintiffs' claims. If litigation were to continue, Defendants have

---

[3] The class administrator was unable to forward 69 returned notice packets to updated addresses.

indicated that they would challenge each Plaintiff's adequacy as class representative, TURSS would likely assert a defense that Transactel was an independent contractor, and Defendants may challenge class certification on the basis that some class members were outside of California at the time they received the call from Transactel. Proceeding with this case presents very real risks regarding class certification, summary judgment, and proving liability at trial, including a possible unfavorable decision on the merits. See Fernandez v. Vict. Secret Stores, LLC, No. CV 06-04149 MMM (SHx), 2008 WL 81508566, at *6 (C.D. Cal. July 21, 2008) ("Because both parties face extended, expensive future litigation, and because both faced the very real possibility that they would not prevail, this factor supports approval of the settlement."). While Plaintiffs believe in the merits of their case, Defendants have strong defenses to class certification and liability, and there is no guarantee that Plaintiffs will prevail. These risks weigh in favor of settlement.

## C. Amount Offered in Settlement

"Basic to the process of deciding whether a proposed settlement is fair, reasonable and adequate is the need to compare the terms of the compromise with the likely rewards of litigation." In re TD Ameritrade Accountholder Litig., 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)) (brackets omitted). However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the Settlement Agreement establishes a $425,000 non-reversionary common fund. The common fund is allotted as follows: Named Plaintiffs each receive a service award of $3,000 ($9,000 total for all Plaintiffs). Class counsel applied for a fee and cost award of $123,250 (29 percent of the common fund). Claims administration costs are estimated at $22,384. The remainder of the common fund will be divided equally among class members that submit valid claims. This remainder is estimated at $270,366. As of

March 9, 2019, 73 valid claims have been submitted. Assuming only the 73 claims are submitted, each of these class members will receive a payment of approximately $3,703.64.[4] This amount reaches close to the $5,000 in statutory damages each class member may have been entitled to under Cal. Penal Code § 637.2 if they ultimately succeeded. Moreover, it is an amount significantly greater than that awarded in factually similar class action settlements. See, e.g., Reed v. 1-800 Contacts, Inc., No. 12cv2359 JM (BGS), 2014 U.S. Dist. LEXIS 255, at *16-17 (S.D. Cal. Jan. 2, 2014) (finally approving class settlement of claims for violation of Cal. Penal Code §§ 632, 632.7 with an estimated distribution of $606 and collecting CIPA cases with lower per capita distribution amounts); Mirkarimi v. Nev. Prop. 1, Ltd. Liab. Co., No. 12cv2160 BTM (DHB), 2015 U.S. Dist. LEXIS 112680, at *10 (S.D. Cal. Aug. 24, 2015) (preliminarily approving class settlement of claims for violation of Cal. Penal Code §§ 632, 632.7 with an estimated distribution as high as $700); Shvager v. Viasat, Inc., No. CV 12-10180 MMM (PJWx), 2014 U.S. Dist. LEXIS 200808, at *26-29 (C.D. Cal. Mar. 10, 2014) (finally approving class settlement of claims for violation of Cal. Penal Code §§ 632, 632.7 with an estimated distribution of $150 and collecting cases with lower settlement amounts).

### D. *Cy Pres* Funds

"A *cy pres* remedy, sometimes called 'fluid recovery,' Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 784 (7th Cir. 2004), is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012). The "*cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions

---

[4] As of March 9, 2019, 83 claims had been submitted. One of these claims was duplicative and 9 were "deficient." At the final approval hearing, class counsel represented that the claims administrator mailed a deficiency letter to the 9 deficient claimants and provided them with 14 days to cure the deficiency. (Doc. No. 73-1 at 15.) None of these claimants cured the deficiencies in their claim or responded to the claims administrator's deficiency letter. Thus, only the 73 valid claims remain.

of a class action settlement fund to the 'next best' class of beneficiaries." <u>Nachshin v. AOL, LLC</u>, 663 F.3d 1034, 1036 (9th Cir. 2011).  The requirement "that a cy pres remedy must be the 'next best distribution' of settlement funds means only that a district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members." <u>Lane</u>, 696 F.3d at 821 (quoting <u>Nachshin</u>, 663 F.3d at 1036) (finding a substantial nexus between Facebook privacy claims and charity giving grants promoting online privacy and security).  "The district court's review of a class-action settlement that calls for a *cy pres* remedy is not substantively different from that of any other class-action settlement except that the court should not find the settlement fair, adequate, and reasonable unless the *cy pres* remedy 'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members . . . .'" <u>Lane</u>, 696 F.3d at 819-20 (quoting <u>Nachshin</u>, 663 F.3d at 1036).

Here, Plaintiffs allege violations of CIPA.  This statute was designed to protect against invasion of the right to privacy and "provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating their right." <u>Ribas v. Clark</u>, 38 Cal. 3d 355, 365 (1985).  The Settlement Agreement provides that after a second distribution of funds has been made to class members any unclaimed funds will be donated to New Media Rights, a program at California Western School of Law.  New Media Rights provides direct legal services to consumers, creators, and entrepreneurs on privacy matters, publishes consumer education materials on privacy issues (including a CIPA guide), and participates in policy advocacy for protection of consumers' right to privacy.  Executive Director and Founder of New Media Rights, Art Neill, declares that the funds will support pro bono preventative privacy-related legal services for consumers, nonprofits, technology entrepreneurs, and creators across the United States.  (Doc. No. 73-3, Exh. A at 2.) Accordingly, the substantial nexus requirement is satisfied.

After holding an evidentiary hearing, the court finds no conflict between class counsel and the *cy pres* recipient.  In <u>Gaos v. Holyoak</u>, an objector challenged a *cy pres*-only award, among other reasons, on the basis that three of the *cy pres* recipients were

organizations housed at class counsel's *alma maters*.  Gaos v. Holyoak (In re Google Referrer Header Privacy Litig.), 869 F.3d 737, 743-45 (9th Cir. 2017), reversed and remanded on other grounds by Frank v. Gaos, 139 S. Ct. 1041, 1043 (2019).  The Ninth Circuit found that "a prior relationship or connection between the two, without more, is not an absolute disqualifier."  Gaos, 869 F.3d at 744.  "Rather, a number of factors, such as the nature of the relationship, the timing and recency of the relationship, the significance of dealings between the recipient and the party or counsel, the circumstances of the selection process, and the merits of the recipient play into the analysis."  Id.  Ultimately, the Ninth Circuit held that the connection between class counsel and the *cy pres* recipients was "nothing more than a barebones allegation that class counsel graduated from schools that house the Internet research centers that will receive funds."  Id. at 746.  Judge Wallace wrote a vigorous dissent.  He suggested that the district court should have held an evidentiary hearing and argued for adoption of the American Law Institute's guidance that "[a] *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection of the recipient was made on the merits."  Id. at 749 (quoting American Law Institute (ALI), Principles of the Law of Aggregate Litigation § 3.07 comment b (2010)) (Wallace, J.).

Here, Plaintiffs' motion for attorneys' fees indicates that class counsel, Mr. Kazerounian, teaches a consumer law course at California Western School of Law as an adjunct professor.  (Doc. No. 72-1 at 13; Doc. No. 72-2, Kazerounian Decl. ¶ 32.)  In addition, the State Bar of California website indicates that Mr. Kazerounian graduated from California Western School of Law.  New Media Rights is a program of the same law school.  After weighing Judge Wallace's concerns in Gaos and holding an evidentiary hearing, the court concludes that there is no conflict between class counsel and the *cy pres* recipient.

First, unlike Gaos, this is not a *cy pres*-only settlement and the amount at issue is much less than the $5.3 million at issue in that case.  In fact, in light of class counsel's testimony at the final approval hearing, the court finds it highly unlikely that New Media

rights will receive any funds. Class members that submit valid claims will receive a check for a substantial amount of money, estimated at $3,703.64. It is unlikely that any class member would not cash such a large check. If a check is not cashed, the remaining funds will be provided to the class members that cashed the prior check in a second distribution. It is only after this second distribution, assuming one is necessary, that New Media Rights would receive any remaining funds. Even if New Media Rights receives some remainder this amount will almost certainly be de minimis.

Second, at the final approval hearing, class counsel testified that he did not have any affiliation with New Media Rights and was not involved in its establishment. Although he is an adjunct professor, Mr. Kazerounian testified that he does not receive any salary from California Western School of Law as he donates his entire salary to the Innocence Project. Mr. Kazerounian further testified that he would not receive any personal benefit by nominating New Media Rights as a *cy pres* recipient in this case.

Lastly, the representations of class counsel and defense counsel at the final approval hearing established that the parties chose New Media Rights as a recipient through arms-length negotiation.

The court sees no reason for a categorical rule that a *cy pres* recipient choice is inappropriate if class counsel is affiliated with a law school that houses the program and *cy pres* recipient. After consideration of counsel's testimony at the evidentiary hearing, the court is satisfied that there is no impropriety or conflict between class counsel and class members because of the identity of New Media Rights as the *cy pres* recipient.

### E. Extent of Discovery and Stage of Proceedings

When assessing a settlement courts focus on whether the "parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Securities Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Linney, 151 F.3d at 1239). See also Onitverso v. Zamoram, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution.").

Here, the settlement was negotiated after two years of litigation and meaningful discovery. Plaintiffs filed an original complaint, First Amended Complaint, and Second Amended Complaint. After a motion to dismiss and an answer to the First Amended Complaint were filed, the parties engaged in substantial discovery. Both parties served several rounds of discovery on each other and engaged in several discovery disputes. After this discovery, the parties engaged in an arms-length private mediation session and confirmatory discovery following the mediation. Ultimately, the parties settled following mediation. This history evidences the parties' significant knowledge regarding the relevant facts, law, and strengths and weaknesses of their claims and defenses. Consequently, this factor weighs in favor of approval of the settlement.

### F. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Technologies, Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, class counsel provided a declaration detailing their experience in litigating consumer class actions and CIPA cases. Class counsel declares that their support of the settlement is based on an assessment of the burdens, uncertainty and risks inherent in class action litigation, as well as the time and expense of trial. In light of the foregoing, this factor weighs in favor of the settlement.

### G. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." Nat'l Rural Telecomm. Coop., Inc., 221 F.R.D. at 529 (citations omitted). Here, no class members have opted out of the class and no objections to the settlement have been received. See id. (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.") Accordingly, this factor weighs in favor of settlement.

## H. Other Factors

The court must also demonstrate that the settlement is "not[] the product of collusion among the negotiating parties." In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 947 (9th Cir. 2011) (quoting In re Mego Fin. Corp., 213 F.3d at 458) (alteration in original) (providing three examples of signs of collusion, namely (1) counsel receives a disproportionate distribution of the settlement, or counsel is amply rewarded but class members receive no monetary distribution; (2) the presence of a "clear sailing" arrangement providing for payment of attorneys' fees; and (3) a provision that fees not awarded revert to defendants rather than be added to the class fund.) See also Young v. Polo Retail, LLC, No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process.")

Here, the parties reached agreement after participating in a day long formal mediation before a neutral third party, Bruce A. Friedman. See Satchell v. Fed. Express Corp., No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive."). Plaintiffs declare that they were involved in settlement discussions. Additionally, class counsel is not receiving a disproportionate share of the settlement and class members will receive monetary compensation, the Settlement Agreement does not contain a clear sailing provision, any unclaimed funds will either be redistributed to eligible class members or donated to New Media Rights, and Plaintiffs will not receive disproportionate compensation for their involvement.

In sum, the court finds the settlement fair, adequate, and reasonable and grants Plaintiffs' motion for final approval.

///

///

///

**MOTION FOR ATTORNEYS' FEES, COSTS & SERVICE AWARDS**

Plaintiffs seek approximately $123,240[5] in combined attorneys' fees and costs and service awards of $3,000 to each of the three named Plaintiffs. (Doc. No. 72.) The court grants Plaintiffs' motion in part.

## I. Attorneys' Fees

### A. Legal Standards

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011). That Defendants agreed in the settlement not to oppose counsel's request for attorneys' fees, costs, and incentive awards, "does not detract from the need carefully to scrutinize the fee award." Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003).

When settlement leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar calculation. See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 944-45 (a second method can be employed as a cross check after choosing either method). The Ninth Circuit has "established 25 percent of the fund as the 'benchmark' award that should

---

[5] Plaintiffs' motion for fees and costs states that counsel is requesting $123,250 in combined attorneys' fees and costs. Plaintiffs seek $114,533.19 in attorneys' fees (Doc. No. 72-1 at 19.) But it is not clear precisely how much Plaintiffs' seek in costs. At one point in their motion, Plaintiffs request $8,689.31 in costs (id. at 32), but elsewhere request $8,706.81 (id. at 31). Adding either of these amounts to the $114,533.19 requested in attorneys' fees does not amount to $123,250, as class counsel suggests. ($114,533.19 + $8,706.81 = $123,240, while $114,533.19 + $8,689.31 = $123,222.50.) But class counsel also declares that they incurred $8,706.81 in costs. (Doc. No. 72-2, Kazerounian Decl. ¶ 19; Doc. No. 72-7, Swigart Decl. ¶ 17.) Accordingly, the court treats the application as a request for $8,706.81 in costs.

17cv129 JM (BLM)

be given in common fund cases. The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award." In re Bluetooth Headset Products Liab. Litig., 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015).

## B. Fees Requested

Plaintiffs' counsel request $114,533.19 in attorneys' fees. This amount is equal to 26.95% of the common settlement fund. Class counsel argues that this award is fair and reasonable in light of the considerable risks associated with the case, the two years devoted to pursuing the litigation, the contingent nature of their representation, the recovery obtained, and the skill and expertise required to prosecute and resolve the claims asserted.

As previously discussed, the settlement amount of $425,000 confers substantial benefits on class members, particularly in light of the risks associated with continuing this litigation to trial, and weighs in favor of the fee amount. The experience of class counsel in litigation class actions of this type also support the request. Moreover, the reaction of the class to the settlement supports the fee application as no class member has objected or

requested exclusion.  Class counsel filed three complaints, defended against a motion to dismiss, litigated several discovery disputes, and attended private mediation.

The lodestar method of cross check further demonstrates the reasonableness of counsel's request.  Class counsel declare that they worked an aggregate of 583 hours and estimate they will work an additional 53 hours before this case is closed.[6]  They do not seek reimbursement for hours worked by paralegals or other staff.  Counsel calculates the lodestar for all work and estimated future work as $278,652.  This lodestar amount results in a multiplier of less than one (0.411) as counsel seeks an award of $114,533.19.

| Hours Worked | | | | | | |
|---|---|---|---|---|---|---|
| **Attorney** | **Title** | **Actual Hours** | **Estimated Future Hours** | **Total Hours** | **Hourly Rate** | **Total Fees** |
| Abbas Kazerounian | Partner | 34.8 | 15 | 49.8 | $705 | $35,109 |
| Jason A. Ibbey | Senior Associate | 171.6 | 12 | 183.6 | $405 | $74,358 |
| Nicholas Barthel | Associate | 40.1 | 0 | 40.1 | $275 | $11,027 |
| Joshua B. Swigart | Partner | 30 | 12 | 42 | $705 | $29,610 |
| Yana A. Hart | Associate | 136.5 | 14 | 150.5 | $295 | $44,397 |
| Daniel G. Shay | Solo Practioner | 170 | 0 | 170 | $495 | $84,150 |
| **TOTAL** | | 583 | 53 | 636 | - | $278,652 |

---

[6] The additional 53 hours are estimated to include work on the motion for final approval, preparing for the final approval hearing, and subsequent work relating to the distribution of funds.

Counsel's hourly rates are reasonable.  In support of their request, counsel submit declarations attesting to each attorney's billing rates, the firms' profiles, and attorney biographies indicating the attorney's experience and skill.  (Doc. Nos. 72-2, 72-7, 72-8, 72-9, 72-10, 72-11.)  The attorneys' hourly rates are also supported by case law indicating that the same attorney or an attorney of comparable skill has been awarded an hourly rate within a reasonable range of their requested rate.  The rates detailed in the declarations of class counsel have been accepted in other class action cases and are comparable to rates approved by other district courts in class action litigation in this community.  See Hartless v. Clorox Co., 273 F.R.D. 630, 644 (S.D. Cal. 2011) (finding hourly rates of $795 for experienced partner to $100 for paralegal reasonable and collecting cases); POM Wonderful, LLC v. Purely Juice, Inc., No. CV 07–2633, 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (finding partner rates of $475 to $750 and associate rates of $275 to $425 reasonable).  Additionally, the United States Consumer Law Survey Report for 2015-2016 indicates that the average market rate for San Diego attorneys handling class action cases is $425.  (Doc. No. 72-4, Exh. 2 at 33.)

In light of the negative multiplier, counsel's hours appear reasonable.  Counsel submit declarations attesting the amount of time spent on tasks, which the court finds adequate.  (See Doc. No. 72-2, Kazerounian Decl. ¶ 13; Doc. No. 72-7, Swigart Decl. ¶ 11; Doc. No. 72-8, Shay Decl. ¶ 8; Doc. No. 72-9, Ibey Decl. ¶ 8; Doc. No. 72-10, Hart Decl. ¶ 9; Doc. No. 72-11, Barthel Decl. ¶ 5.)   The court awards counsel $114,533.19 in attorneys' fees.

## II.  Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client."  Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994).  Plaintiffs request reimbursement of $8,706.81 in litigation costs.[7]  Mr. Kazerounian

---

[7] As noted above, the court considers the application as a request for reimbursement of $8,706.81 in costs.

declares that his firm incurred $5,801.65 in litigation costs. He declares that "[s]ome of the larger expenses include $4,950 payment to JAMS for an all-day mediation; $571.32 for travel; and $142.15 for lodging." (Doc. No. 72-2, Kazerounian Decl. ¶ 19.) This leaves $138.15 unaccounted for. Likewise, Mr. Swigart declares that his firm incurred $2,905.16 in litigation costs. He declares that "[s]ome of the larger expenses include $2,060.55 for deposition transcripts; $400.00 court filing fee; [and] $300.00 service costs of the complaint for both defendants." (Doc. No. 72-7, Swigart Decl. ¶ 17.) This leaves $144.61 unaccounted for. Accordingly, the court deducts the $282.76 not accounted for in counsel's declarations. The court awards $8,424.05 in costs.

## III. Service Awards

The purpose of incentive awards is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

Each representative Plaintiff seeks an incentive award of $3,000, for a total of $9,000, from the common fund. The incentive award is close to the amount individual class members are estimated to receive. This amount is also less than incentive awards received in similar cases. See, e.g., Cohorst v. BRE Properties, Inc., 10cv2666 JM (BGS), 2012 WL 153754, at *1 (S.D. Cal. Jan. 18, 2012) (awarding $5,000 incentive awards to three CIPA plaintiffs). Plaintiffs Ronquillo-Griffin, Nguyen, and Smith declare that they actively participated in this litigation by meeting with class counsel, participating in calls relating to this case, responding to written discovery requests, responding to inquiries from class counsel, preparing for and testifying at their depositions, being involved in settlement discussions, and submitting declarations in this action. (Doc. No. 72-12, Ronquillo-Griffin Decl. ¶ 5; Doc. No. 72-13, Nguyen Decl. ¶ 5; Doc. No. 72-14, Smith Decl. ¶ 5.) This

amount appears reasonable and there are not any circumstances indicating that this award would create a conflict between Plaintiffs and class members. Accordingly, Plaintiffs are each awarded $3,000 as a service award.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for final approval is granted. Plaintiffs' motion for attorneys' fees, costs, and service awards is granted in part. There being no just reason for delay, the Clerk of Court is hereby directed to enter judgment on the Second Amended Complaint ("Complaint") for Damages and Injunctive Relief (Doc. No. 47), and the Complaint is hereby dismissed with prejudice in all respects.

Without affecting the finality of judgment, the Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to this action and/or the Settlement Agreement, for the purpose of enforcing the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

I. The Agreement and all definitions set forth therein are hereby incorporated with and made part of this Final Order Approving Class Action Settlement ("Final Order").

II. <u>JURISDICTION</u>: The Court has jurisdiction over the subject matter of the Lawsuit and over all settling Parties thereto including, without limitation, the Class Members.

III. <u>CLASS MEMBERS</u>: Pursuant to Fed. R. Civ. P. 23(b)(3), the Lawsuit is hereby finally certified, for settlement purposes only, as a class action on behalf of the following Settlement Class Members:

All persons in California who, during the period from January 24, 2016 through February 8, 2017, were called by Transactel on behalf of TURSS on their cellular telephones and spoke with a representative.

Excluded from the Settlement Class are the Judges to whom the Action is assigned and any member of the Judges' staffs and immediate families, as well as all persons who validly request exclusion from the Settlement Class.

IV.     CLASS REPRESENTATIVES AND CLASS COUNSEL: Pursuant to Fed. R. Civ. P. 23, Plaintiffs are the Class Representatives and Kazerouni Law Group, APC (Abbas Kazerounian, Esq. and Jason A. Ibey, Esq.), Hyde & Swigart (Joshua B. Swigart, Esq.) and Law Office of Daniel G. Shay (Daniel G. Shay, Esq.), are certified as Class Counsel.

V.     NOTICE AND CLAIMS PROCESS: Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, KCC, has complied with the approved notice process as confirmed in its declaration filed with the Court. The Court finds that the form and method for notifying the Settlement Class Members of the Settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, provided a means of notice reasonably calculated to apprise the Settlement Class Members of the pendency of the action and the proposed settlement, and thereby satisfied the requirements of Fed. R. Civ. P. 23(c)(2) and due process, and constituted the best notice practicable under the circumstances, and due and sufficient notice to all Settlement Class Members entitled thereto. Specifically, individual notice was provided to those potential Settlement Class Members whose cellular telephone numbers were identified in Transactel's records as having received a call from Transactel on behalf of TURSS during the period from January 24, 2016 through February 8, 2017 and for whom a name and address could be located by a search of Transactel's records or a reverse directory search performed by the Settlement Administrator; and all other persons were notified by a dedicated settlement website. The Court finds that the notice process was designed to advise the Settlement Class Members of their rights. The Court finds that the notice requirements set forth in the Class Action Fairness Act and any other applicable law have been satisfied. Further, the Court finds that the Common Fund is approved, and the claim process set forth in the Agreement was followed and that the process was the best practicable procedure under the circumstances.

VI.   <u>FINAL CLASS CERTIFICATION</u>:  The Court finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, for settlement purposes, namely:

1) The Settlement Class Members are so numerous that joinder of all of them in the Lawsuit would be impracticable;

2) There are questions of law and fact common to the Settlement Class Members, which predominate over any individual questions;

3) The claims of Plaintiffs are typical of the claims of the Settlement Class Members;

4) Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all the Settlement Class Members; and

5) Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

The Court finds that the Settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Settlement Class Members, especially in light of the benefits to the Settlement Class Members, the strength of Plaintiffs' case, the complexity, expense and probable duration of further litigation, the risk and delay inherent in possible appeals, and the risk of collecting any judgment obtained on behalf of the class.

VII.   <u>SETTLEMENT TERMS</u>:   The Agreement, which has been filed with the Court and shall be deemed incorporated herein, and the proposed settlement contained therein, are finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court. The Settlement Administrator shall conduct all administration of the Common Fund. The Settlement Administrator shall prepare and issue all disbursements of the Individual Settlement Amounts from the Common Fund to Authorized Claimants entitled to such benefits within the time period specified in the Agreement. In accordance with Section 10 of the

17cv129 JM (BLM)

Agreement, the Court approves New Media Rights as the *cy pres* recipient of unclaimed settlement funds.

VIII. <u>ATTORNEYS' FEES</u>: The Court finds that Class Counsel are qualified to represent the Settlement Class. The Court hereby grants Class Counsel's request for an award of attorney's fees and litigation costs in the total amount of $122,957.24. The Court finds that the amount of this award is fair and reasonable in light of the efforts expended by Class Counsel in prosecuting this Action and the results obtained, based on either the percentage-of-the-fund or lodestar methodology. The attorney's fees and litigation costs are to be paid from the Common Fund within the time period set forth in the Agreement.

IX. <u>SERVICE AWARDS</u>: The Court finds that it is appropriate for the Class Representatives each to be paid $3,000 from the Common Fund, as a service award for instituting, prosecuting and bearing the risk of this litigation. Aside from any claims that are paid to them as a result of claims they made as members of the Settlement Class, this service award shall be the only consideration paid to the Class Representatives.

X. <u>EXCLUSIONS AND OBJECTIONS</u>: This Final Order and Judgment applies to all claims or causes of action settled under the terms of the Agreement, and shall be fully binding with respect to all Settlement Class Members. Zero exclusion requests were received.

XI. Settlement Class Members were given an opportunity to object to the settlement. Zero objections were received.

XII. This Order is binding on all Settlement Class Members.

XIII. <u>RELEASE OF CLAIMS AND DISMISSAL OF LAWSUIT</u>: Upon entry of the Judgment, Class Representatives, for themselves and on behalf of each Settlement Class Member, and their respective heirs, assigns, successors, agents, attorneys, executors, and representatives, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, irrevocably, and forever released Defendants, and each of them, and, whether or not specifically named herein, each of their past or present directors, officers, employees, agents, insurers or reinsurers, shareholders, attorneys, advisors, consultants,

representatives, partners, affiliates, related companies, affiliated companies, parents and their other subsidiaries, subsidiaries, joint venturers, independent contractors, vendors, service providers, wholesalers, resellers, distributors, retailers, divisions, predecessors, successors, and assigns (collectively, the "Released Parties"), from any and all liabilities, claims, causes of action, damages, penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, suspected or unsuspected, which were asserted in the Action or are related to the claims asserted in the Action, including any and all claims relating to the intercepting, monitoring and/or recording of telephone calls or other communications, and any and all claims for violation of the California Invasion of Privacy Act (including without limitation Cal. Penal Code §§ 630, 631, 632, and 632.7), and any and all claims for statutory damages under Cal. Penal Code § 637.2, and any and all claims under any laws that regulate, govern, prohibit or restrict the intercepting, recording or monitoring of telephone calls or other communications (hereafter, collectively, the "Released Claims").  In addition, each of the Class Representatives, for herself or himself only and not on behalf of the Settlement Class Members, hereby fully, finally and irrevocably releases Defendants and, whether or not specifically named herein, each of their past or present directors, officers, employees, agents, shareholders, members, investors, insurers, reinsurers, attorneys, advisors, consultants, representatives, partners, affiliates, related companies, parents, subsidiaries, joint venturers, independent contractors, service providers, vendors, divisions, predecessors, successors, and assigns, from any and all liabilities, claims, causes of action, damages, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, suspected or unsuspected, of any kind or nature whatsoever, which were asserted in this Action or are related to the claims asserted in the Action.

     XIV. This Order is not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

XV. Without affecting the finality of this Order, the Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Action and/or Agreement, for the purpose of enforcing the Settlement Agreement.

IT IS SO ORDERED.

DATED: May 9, 2019

JEFFREY T. MILLER
United States District Judge

17cv129 JM (BLM)